UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
SHAREEN ISMAIL, M.D., and THE ALEXANDRE CENTRE
FOR CHILDREN'S HEALTH (ISMAIL MEDICINE PLLC),

                       Plaintiffs,

  - v -

NEW YORK STATE DEPARTMENT OF HEALTH,
JAMES V. MCDONALD, JOSEPH A. GIOVANNETTI,
JENNIFER PERSON, and JOHN DOES 1-5,

                   Defendants.
--------------------------------------------------------------------x

**COMPLAINT**

Civil Action No.:  5:25-cv-1653 (MAD/TWD)

By and through her counsel, Davenport Law PLLC, the plaintiffs, Shareen Ismail, M.D. and The Alexandre Centre for Children's Health (Ismail Medicine PLLC) (collectively "Plaintiffs"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to stop a state-sponsored campaign of defamation, harassment, and witness intimidation designed to destroy a physician's practice and professional reputation without due process of law.

2.     The Defendants—agents and officials of the New York State Department of Health ("DOH")—have engaged in a shocking pattern of abuse of power. They have not merely investigated Plaintiff Dr. Shareen Ismail; they have targeted her for destruction.

3.     Without a hearing, without notice, and without a single finding of wrongdoing by any court or administrative body, Defendants publicly branded Dr. Ismail

a criminal. On September 30, 2025, they placed her name and her medical practice on a public "School Vaccination Fraud Awareness" website, explicitly accusing her of "vaccination fraud." This 'digital scarlet letter' was designed to be, and has been, professionally fatal.

4.　　Simultaneously, Defendants executed a "plus" factor to this unconstitutional stigma: they suspended Dr. Ismail's access to the New York State Immunization Information System ("NYSIIS"), a tool essential to the practice of pediatrics in New York. This suspension was not limited to Dr. Ismail; in an act of collective punishment, Defendants suspended the access of her entire clinic, including every nurse and employee, effectively shutting down her ability to vaccinate patients.

5.　　When Dr. Ismail refused to capitulate, Defendants escalated their tactics from administrative overreach to active witness intimidation. DOH "detectives" have been dispatched to the private homes of Dr. Ismail's employees to conduct unannounced interrogations. DOH investigators have been recorded making harassing phone calls to patients, slandering Dr. Ismail by asking, "Were you aware Dr. Ismail is against vaccines?" and threatening private citizens with home raids, stating, "It's not impossible that I would knock on your door."

6.　　Most disturbingly, Defendants have engaged in the spoliation of government records to manufacture a pretext for their actions. On November 12, 2025, just 48 hours after a County Health Department official validated and entered immunization records for Dr. Ismail's own child, those records were inexplicably "wiped" from the state database. Defendants are now using this deletion—an act of sabotage—to justify the continued exclusion of a six-year-old child from school.

7.     This conduct "shocks the conscience." It is a flagrant violation of Dr. Ismail's Fourteenth Amendment rights to procedural and substantive due process, and a retaliation against her First Amendment rights. Plaintiffs seek declaratory and injunctive relief to end this "hit job," and compensatory and punitive damages for the devastation Defendants have wrought.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights) because the claims arise under the Constitution and laws of the United States and 42 U.S.C. § 1983.

9.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution. The state and federal claims derive from a common nucleus of operative fact: the Defendants' unified campaign to destroy Plaintiffs' practice through defamation, regulatory abuse, and harassment.

10.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant New York State Department of Health is headquartered in Albany, New York, which is within this judicial district. Furthermore, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including the issuance of the defamatory "School Vaccination Fraud" designation from Albany, the direction of the investigation from Albany, and the harassment of patients and employees who reside and work in Onondaga and Madison Counties, which are within this District.

## COMPLIANCE WITH NOTICE OF CLAIM REQUIREMENTS

11.     Plaintiffs have fully complied with the notice of claim requirements precedent to the commencement of a tort action against the State of New York and its officials.

12.     On October 23, 2025, Plaintiffs duly served a verified Notice of Intention to File Claim upon the Attorney General of the State of New York via Certified Mail, Return Receipt Requested.

13.     This Notice was served within ninety (90) days of the accrual of the claims (which commenced on or about September 30, 2025).

14.     The Notice set forth the nature of the claims, including defamation, tortious interference with business relations, abuse of process, and violation of due process rights, as well as the time when, the place where, and the manner in which the claims arose.

15.     More than thirty (30) days have elapsed since the service of said Notice, and the State has neglected or refused to make an adjustment or payment thereof.

## PARTIES

16.     Plaintiff SHAREEN ISMAIL, M.D. ("Dr. Ismail") is a physician licensed to practice medicine in the State of New York. She is the owner and medical director of The Alexandre Centre for Children's Health. She is a resident of Onondaga County, New York.

17.     Plaintiff THE ALEXANDRE CENTRE FOR CHILDREN'S HEALTH ("The Centre") is a medical practice organized as ISMAIL MEDICINE PLLC under the

laws of the State of New York, with its principal place of business located at 8016 East Genesee Street, Fayetteville, New York. The Centre provides pediatric care to children in the Central New York region.

18.    Defendant NEW YORK STATE DEPARTMENT OF HEALTH ("DOH") is an agency of the State of New York responsible for the administration of public health laws, including the New York State Immunization Information System ("NYSIIS").

19.    Defendant JAMES V. MCDONALD, M.D., M.P.H. ("Commissioner McDonald") is the Commissioner of the New York State Department of Health. He is the chief executive officer of the DOH and is responsible for its overall policy, direction, and supervision. He is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for damages.

20.    Defendant JOSEPH A. GIOVANNETTI, ESQ. ("Director Giovannetti") is the Director of the Bureau of Investigations within the DOH's Division of Legal Affairs. He is the official who authorized and directed the investigation into Dr. Ismail, issued the defective subpoena, and authorized the placement of Plaintiffs on the "School Vaccination Fraud" website. He is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for damages.

21.    Defendant JENNIFER PERSON ("Investigator Person") is an Investigator employed by the DOH Bureau of Investigations. She personally executed the harassment campaign against Plaintiffs' patients, including making defamatory statements and threatening home visits. She is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for damages.

22.    Defendants JOHN DOES 1-5 are agents, investigators, or employees of the DOH whose identities are currently unknown to Plaintiffs. They include the

"detectives" who conducted unannounced visits to the private homes of Plaintiffs' employees and the individuals responsible for the "wiping" of electronic immunization records from NYSIIS. They are sued in their official capacities for declaratory and injunctive relief and in their individual capacities for damages.

## **FACTUAL ALLEGATIONS**

23.     This case arises from a systematic, state-sponsored campaign to destroy a physician's practice and professional reputation without due process of law. The Defendants—high-ranking officials and agents of the New York State Department of Health—have weaponized their administrative authority to execute a "hit job" on Plaintiff Dr. Shareen Ismail. Their actions, detailed below, follow a clear pattern: punishment before process, public defamation disguised as "fraud awareness," the suspension of essential practice tools without a hearing, and the escalation to police-state tactics of witness intimidation and spoliation of evidence when challenged.

### A.     **The State's "Hit Job": Punishment Before Process**

24.     On or about September 30, 2025, Defendant Joseph A. Giovannetti and the NYSDOH initiated a coordinated campaign to destroy the professional reputation and medical practice of Plaintiff Dr. Shareen Ismail. This campaign began not with a hearing or a formal charge, but with a public execution of her character.

25.     Without affording Dr. Ismail a scintilla of due process—no hearing, no interview, no notice of charges, and no adjudication of wrongdoing—Defendants publicly listed Dr. Ismail and her practice, The Alexandre Centre for Children's Health,

on a NYSDOH website titled "School Vaccination Fraud Awareness" (https://health.ny.gov/prevention/immunization/schools/fraud.htm).

26.    This website is not a neutral administrative listing. It is a digital pillory. The page explicitly conflates Dr. Ismail with providers who have been "permanently excluded," "banned," or who have "agreed to no longer practice medicine." By placing her name on this specific "Fraud Awareness" list, Defendants have expressly and falsely communicated to the public, school officials, and her patients that Dr. Ismail is engaged in criminal fraud.

27.    Defendants further weaponized this website by including a directive to all school officials in the State of New York: "Paper-only records of vaccinations administered after this date from this provider must not be accepted." This directive, issued without legal authority or factual basis, effectively invalidated Dr. Ismail's medical license in the eyes of the education system, rendering her unable to vouch for her own patients' health.

28.    Simultaneously with this defamatory publication, Defendants executed the "plus" factor of their unconstitutional "stigma-plus" scheme: they summarily suspended the NYSIIS access of The Alexandre Centre.

- Defendant Giovannetti invoked Public Health Law § 2168(9) to justify this suspension "effective immediately," deliberately bypassing the pre-deprivation hearing requirements of Public Health Law § 230.

- In an act of collective punishment, Defendants did not merely suspend Dr. Ismail; they suspended the NYSIIS access of the entire clinic, including seven innocent nurses and staff members who had no involvement in the allegations.

- This action was calculated to inflict maximum damage: it effectively shut down the Centre's ability to practice pediatrics, as NYSIIS access is essential for verifying histories, reporting vaccinations, and generating the forms required for school attendance.

29.    The timing confirms the malice. Defendants published the "Fraud" listing and executed the suspension before they had even completed a cursory review of the facts, and weeks before the return date of their own subpoena. The verdict—"fraud"— was announced before the investigation had even truly begun.

**B.    The Defective Subpoena and Circumvention of Due Process**

30.    To create a pretext for this summary punishment, Defendant Giovannetti issued a Subpoena Duces Tecum (Inv. No. DOH-0942(b)) on September 30, 2025. This legal instrument was fatally defective, issued in bad faith, and designed to circumvent the laws protecting physicians in New York State.

31.    The substance of the DOH's investigation—allegations of fraudulent record-keeping by a licensed physician—is a matter of professional misconduct. By law, such investigations are the exclusive province of the Office of Professional Medical Conduct (OPMC) and are governed by the strict procedural safeguards of Public Health Law ("PHL") § 230.

32.    Defendant Giovannetti knew that proceeding under PHL § 230 would afford Dr. Ismail critical due process rights. To avoid these protections, he intentionally and unlawfully invoked the Commissioner's general administrative powers under PHL § 206 and § 12-a—statutes intended for general public health inquiries, not disciplinary proceedings against licensees.

33.     By using this "backdoor" administrative authority, Defendants stripped Dr. Ismail of three fundamental statutory rights guaranteed by the Legislature in PHL § 230:

- **Denial of Notice:** Under PHL § 230, a physician must receive at least twenty days' written notice detailing the conduct under investigation before an interview. Dr. Ismail received no such notice.

- **Denial of the Right to be Heard:** Under PHL § 230(10)(a)(iii), providing the licensee an opportunity for an interview is a "condition precedent" to convening an investigation committee. Defendants bypassed this entirely, moving directly to punishment (website listing/suspension).

- **Denial of Confidentiality:** PHL § 230 mandates that all investigatory files and patient records remain strictly confidential. By publicly listing Dr. Ismail on a "Fraud" website during the pendency of the investigation, Defendants flagrantly violated this statutory guarantee of privacy.

- **The Fishing Expedition:** The subpoena itself was grossly overbroad and abusive. It demanded the production of complete medical charts—including clinical notes, diagnoses, and billing records—for 51 unrelated patients.

34.     This demand constituted an unconstitutional 'general warrant' to rummage through privileged patient files in search of a crime.

35.     There was no nexus between the broad request for 51 full patient histories and the narrow allegation regarding immunization reporting.

36.     This demand violated the physician-patient privilege of 51 innocent families who were not targets of the investigation.

37.    When Plaintiffs' counsel formally objected to this illegal subpoena on October 20, 2025, outlining these specific defects, Defendant Giovannetti refused to withdraw it. Instead, he doubled down, stating in an October 27 email that the Department would not remove Dr. Ismail from the "Fraud" website, effectively admitting that the listing was a tool of coercion to force compliance with an illegal process.

C.    **Witness Intimidation and Harassment of Patients**

38.    When Dr. Ismail refused to capitulate to the unlawful subpoena, Defendants escalated their tactics from administrative overreach to active, police-state style witness intimidation.

39.    Defendants dispatched agents, including Defendant Jennifer Person and the John Doe Defendants, to contact Dr. Ismail's patients directly. These contacts were not legitimate fact-finding inquiries; they were coercive interrogations designed to terrorize patients, slander Dr. Ismail, and destroy her business relationships.

40.    **The Harassment of Barbara Campbell:** On October 8, 2025, Defendant Jennifer Person, identifying herself as a DOH Investigator, telephoned Barbara Campbell, a patient/parent at the Centre. This call, captured on audio and video, reveals a shocking abuse of power:

- Defendant Person initiated the call under the guise of "helping" the patient clarify vaccination records, engaging the patient in a 15-minute interrogation about her medical choices and relationship with Dr. Ismail.

- Defendant Person explicitly defamed Dr. Ismail to her own patient, asking the leading and malicious question: "Were you aware Dr. Ismail is against vaccines?" This statement was a verifiable lie—Dr. Ismail runs a vaccination

clinic—designed to destroy the patient's trust and damage Dr. Ismail's professional reputation.

- Defendant Person actively interfered with the Centre's business contract. She falsely told the patient that any vaccines administered by the Centre after September 30 were "null and void" and explicitly instructed the patient: "You're going to need to . . . go back to the original pediatrician . . . and get that vaccine." This was a state agent directly ordering a consumer to leave one business and patronize a competitor.

- Most egregiously, Defendant Person threatened the patient with an unannounced visit by state agents to her private residence. She stated: "We're in and out of the Syracuse area. It's not impossible that I would knock on your door.'" The patient reasonably interpreted this as a threat of a government raid on her home.

41. **The Raid on Maria Petersen:** The threat of home visits was not idle. On or about November 14, 2025, Defendants executed this threat against one of Dr. Ismail's employees.

- DOH "detectives" (John Doe Defendants) traveled to the private home of Maria Petersen, RN, a nurse employed by the Centre.

- These agents conducted an unannounced, in-person interrogation of Ms. Petersen at her doorstep.

- Defendants knew Ms. Petersen was an employee of the Centre and knew the Centre was represented by counsel. By sending agents to her private home to question her outside the presence of counsel, Defendants engaged in a calculated attempt to bypass legal representation and intimidate a witness.

11

42.    This pattern of conduct—slandering a doctor to her patients, declaring her medical work "void," steering business to competitors, and sending agents to the private homes of nurses—constitutes a gross abuse of power that "shocks the conscience" and violates the fundamental liberties guaranteed by the Fourteenth Amendment.

### D.    <u>Spoliation of Evidence: The "Wiping" of Records</u>

43.    The malice of the Defendants culminated in the destruction of government records to entrap Dr. Ismail and justify her continued punishment.

44.    On November 10, 2025, in an effort to resolve the status of her own son's school enrollment, Dr. Ismail had her son's immunization records reviewed by the Onondaga County Health Department. A County official, Brittany Checksfield, RN, reviewed the source documents, validated them, and personally entered the vaccinations into NYSIIS.

- Nurse Checksfield confirmed this validation in writing to Dr. Ismail, stating: "I put all of [Dr. Ismail's son's] vaccines into the New York State Immunization Information System. He is up to date with current NY school requirements."

- Independent verification by a school nurse in a neighboring district (Renee Fuller, RN) on the same day confirmed the records were present and valid in the state system.

45.    Less than 48 hours later, on November 12, 2025, those valid electronic records were inexplicably and completely "wiped" from the NYSIIS database.

- This deletion was not a clerical error. It was a targeted "bulk delete" of an entire immunization history that had just been validated by a government official.

- Only individuals with high-level administrative privileges within the NYSIIS system—namely, the Defendants or their agents—possess the capability to execute such a deletion.

46.    Defendants then used this act of spoliation as a weapon. By deleting the valid records, they manufactured a pretext to claim that Dr. Ismail's son was unvaccinated and to bolster their false narrative that Dr. Ismail submits "fraudulent" data. They created a "Catch-22" where they demanded proof of vaccination in NYSIIS, and then deleted the proof once it was entered. This act of digital sabotage constitutes an unreasonable seizure of Plaintiffs' data and a violation of substantive due process.

**FIRST CAUSE OF ACTION**

**§ 1983 – Violation of the Fourteenth Amendment
Procedural Due Process – "Stigma-Plus"
(Against All Defendants)**

47.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

48.    The Fourteenth Amendment to the United States Constitution prohibits the State from depriving any person of life, liberty, or property without due process of law. Plaintiffs possess constitutionally protected interests in:

- **Liberty Interest:** Their professional reputation, good name, and standing in the medical community.

- **Property Interest:** Their license to practice medicine, their continued access to the state-mandated NYSIIS database (a prerequisite for practicing pediatrics), and the goodwill of their established medical practice.

49.    Defendants, acting under color of state law, deprived Plaintiffs of these interests through a "stigma-plus" defamation campaign that combined public branding of criminality with the tangible destruction of professional rights.

50.    **The "Stigma" Element:** Defendants publicly and falsely branded Dr. Ismail and her practice as criminals and frauds.

- **The Website:** On September 30, 2025, Defendants published Plaintiffs' names on a state-run website titled "School Vaccination Fraud Awareness." This listing explicitly and falsely accused Plaintiffs of "vaccination fraud" and grouped them with providers who had been "banned" or surrendered their licenses.

- **The School Directive:** The website contained a directive instructing all New York schools to reject Plaintiffs' records, effectively declaring Dr. Ismail incompetent and untrustworthy to the entire education system.

- **The Oral Slander:** Defendants' agents, including Investigator Person, made oral statements to patients, such as "Were you aware Dr. Ismail is against vaccines?" and that her medical work was "null and void."

- These statements are false, stigmatizing, and capable of being proven false. They strike at the very heart of Dr. Ismail's professional integrity and competence.

51.    **The "Plus" Element:** Defendants did not merely defame Plaintiffs; they simultaneously imposed tangible burdens ("plus factors") that altered Plaintiffs' legal status and extinguished rights recognized by state law.

- **NYSIIS Suspension:** Defendants summarily suspended the NYSIIS access of Plaintiffs and their entire staff. Access to NYSIIS is a state-created right and a professional necessity for pediatricians in New York (PHL § 2168). By revoking this access, Defendants effectively terminated Plaintiffs' ability to practice their profession.

- **Business Destruction:** Defendants' directive to schools to reject Plaintiffs' records constitutes a state-imposed barrier to Plaintiffs' ability to contract with patients and conduct business, destroying the goodwill and value of the practice.

52.    **Lack of Due Process:** This deprivation occurred without any pre-deprivation process, let alone the process due under the Constitution.

- **No Notice:** Plaintiffs received no formal notice of charges or specifications of misconduct prior to the "Fraud" listing or the suspension.

- **No Hearing:** Plaintiffs were afforded no hearing, no interview, and no opportunity to be heard or to present evidence before being branded as frauds and stripped of their NYSIIS access.

- **Statutory Bypass:** Defendants deliberately bypassed the mandatory procedural safeguards of Public Health Law § 230, which provides the exclusive mechanism for investigating and disciplining physician misconduct. By ignoring these statutory guarantees, Defendants acted *ultra vires* and in bad faith.

15

53.    As a direct and proximate result of this denial of due process, Plaintiffs have suffered catastrophic damages, including the destruction of their professional reputation, the loss of patients, the inability to practice medicine effectively, and severe emotional distress.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment
### Substantive Due Process Claim
### (Against All Defendants)

54.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

55.    The Substantive Due Process clause of the Fourteenth Amendment protects citizens from arbitrary, oppressive, and abusive government action that "shocks the conscience" and violates the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172 (1952); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

56.    Defendants' conduct in this matter transcends mere administrative overreach or negligence; it constitutes a deliberate, malicious, and conscience-shocking abuse of state power designed to destroy a private citizen. Specifically:

- **The Entrapment and Spoliation:** Defendants engaged in digital sabotage by maliciously "wiping" valid government records from the NYSIIS database on November 12, 2025. This was not a clerical error; it was a targeted deletion of records that had been validated by a government official just 48 hours earlier. By deleting this evidence, Defendants manufactured a pretext to continue branding Dr. Ismail a "fraud" and to justify the exclusion of her child from school. Creating a Kafkaesque trap—

16

where the State demands proof of compliance and then destroys that proof once provided—is an act of consummate arbitrariness that shocks the conscience.

- **Police-State Intimidation Tactics:** Defendants dispatched "detectives" to the private homes of Dr. Ismail's employees (e.g., Maria Petersen, RN) to conduct unannounced, warrantless interrogations on their doorsteps. Bypassing counsel to ambush nurses at their homes is a tactic of intimidation, not legitimate investigation.

- **Terrorizing Patients:** Defendants' agents, including Investigator Person, threatened private citizens (patients) with government home raids (e.g., "It's not impossible that I would knock on your door"). Using the threat of state force to coerce and terrify patients into abandoning their chosen physician is an egregious abuse of power that violates fundamental standards of decency.

- **Collective Punishment:** Defendants summarily suspended the NYSIIS access of the entire Alexandre Centre staff, punishing seven innocent nurses for the alleged conduct of one physician. Guilt by association and collective punishment are anathema to the concept of due process and ordered liberty.

57.     Taken together, this campaign of digital erasure, home invasions, and threats against patients reveals a government apparatus that has gone rogue, operating outside the bounds of law and decency to crush a perceived enemy. This conduct deprives Plaintiffs of their fundamental rights to liberty and property in a manner that is arbitrary in the constitutional sense.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 – Violation of the First Amendment (Retaliation)
(Against All Defendants)**

58.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

59.    Plaintiffs engaged in constitutionally protected activity, specifically:

- **Professional Speech:** Dr. Ismail exercised her First Amendment right to express her professional medical judgment, including determining appropriate vaccination schedules and issuing medical exemptions where clinically indicated.

- **Freedom of Association:** Plaintiffs exercised their right to associate with patients and families who seek individualized medical care and who may hold dissenting views on state vaccination mandates.

- **Right to Petition:** Plaintiffs exercised their right to petition the government for redress of grievances by retaining counsel, formally objecting to the defective subpoena on October 20, 2025, and filing a Notice of Intention to File Claim. She also has completed and submitted valid medical exemptions for some of her patients.

60.    Defendants retaliated against Plaintiffs for this protected conduct through a campaign of escalation designed to silence and punish them.

- **The "Fraud" Listing:** In retaliation for Dr. Ismail's medical speech and association with certain patients, Defendants created the "School Vaccination Fraud" list to publicly shame and silence her.

- **The Escalation:** In direct retaliation for Plaintiffs' legal objection to the subpoena (Right to Petition), Defendants escalated their tactics from administrative suspension to active harassment. The harassing calls to patients (e.g., Barbara Campbell) and the home raids on employees (e.g., Maria Petersen) occurred after Plaintiffs asserted their legal rights.

- **The Spoliation:** The malicious "wiping" of immunization records on November 12, 2025, occurred in retaliation for Plaintiffs' attempt to prove compliance and vindicate their rights.

61.    **Causal Connection:** There is a direct causal connection between Plaintiffs' protected activity and Defendants' adverse actions. The temporal proximity is immediate: the harassment and spoliation followed directly on the heels of Plaintiffs' legal objections and attempts to demonstrate compliance. Further, Plaintiffs have submitted valid medical exemptions for patients this school year (2025-2026) throughout the summer and fall who seek to attend school without having some of the mandatory vaccines generally required for school attendance. Defendants have articulated no legitimate, non-retaliatory reason for deleting valid government records or interrogating nurses at their private homes.

62.    **Chilling Effect:** Defendants' retaliatory conduct would deter a person of ordinary firmness from continuing to engage in protected speech or petitioning the government. Indeed, the explicit goal of Defendants' actions—branding the doctor a "fraud," suspending her practice tools, and terrorizing her patients—was to chill Dr. Ismail's practice, force her to abandon her professional judgment, and silence her advocacy for her patients.

**FOURTH CAUSE OF ACTION**

**42 U.S.C. § 1983 – Violation of the Fourth Amendment**
**Unreasonable Search and Seizure**
**(Against All Defendants)**

63.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

64.     The Fourth Amendment to the United States Constitution protects citizens from unreasonable government searches and seizures of their "persons, houses, papers, and effects."

65.     **Unreasonable Seizure (Data Spoliation):**

- Plaintiffs possess a constitutionally protected property interest in their business records, patient data, and the immunization information they have lawfully entered into the state registry (NYSIIS) pursuant to Public Health Law § 2168.

- Defendants' act of maliciously deleting ("wiping") the valid immunization records of Dr. Ismail's son and potentially other patients from the NYSIIS database on November 12, 2025, constituted a meaningful interference with Plaintiffs' possessory interests in that data.

- This seizure and destruction of digital property was executed without a warrant, without probable cause, and without any pre-deprivation process. It was an arbitrary and unreasonable exercise of state power designed to manufacture evidence of non-compliance.

66.     **Unreasonable Search (Home Intrusions and Interrogations):**

- Defendants' conduct in dispatching "detectives" to the private homes of Plaintiffs' employees (specifically Maria Petersen, RN) to conduct unannounced, warrantless interrogations constituted an unreasonable government intrusion into the sanctity of the home.

- The home is the 'first among equals' under the Fourth Amendment. Investigating administrative matters by ambushing private citizens at their doorsteps without a warrant is *per se* unreasonable.

- Defendants further violated the Fourth Amendment by threatening patients (Barbara Campbell) with similar unannounced home raids (e.g., "It's not impossible that I would knock on your door"). These threats were coercive and designed to force the disclosure of private information without a warrant or subpoena, constituting an attempted unreasonable search.

67.    **Pretextual Administrative Search by a Biased and Hostile Administrative Agency:**

- To the extent Defendants claim these actions were "administrative searches," they were pretextual and unconstitutional. The Supreme Court has held that administrative searches cannot be used as a pretext for a criminal or punitive investigation. *New York v. Burger*, 482 U.S. 691, 724 (1987) ("In the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal investigations.")

- Here, the "investigation" was a pretext to punish Dr. Ismail for her professional speech and to circumvent the strict warrant-like requirements of PHL § 230.

**FIFTH CAUSE OF ACTION**

**Tortious Interference with Business Relations (State Law Claim)**
**(Against Defendants in their Individual Capacities)**

68.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

69.    Plaintiffs had valid, existing contractual and business relationships with their patients, including Barbara Campbell, for the provision of medical care.

70.    Defendants had actual knowledge of these relationships, as evidenced by their use of Plaintiffs' own patient lists to target individuals for harassment.

71.    Defendants intentionally and maliciously interfered with these relationships using wrongful means that amounted to independent torts and criminal conduct, including:

- **Defamation:** Defendants' agent, Investigator Person, slandered Dr. Ismail to her patients by asking, "Were you aware Dr. Ismail is against vaccines?"—a knowingly false statement designed to destroy trust.

- **Fraudulent Misrepresentation:** Investigator Person falsely told patients that valid medical services and records provided by Plaintiffs were "null and void," inducing patients to believe their children were unprotected or non-compliant.

- **Duress and Coercion:** Investigator Person threatened patients with unannounced government home raids ("It's not impossible that I would knock on your door") to coerce them into cooperating with the DOH and abandoning Dr. Ismail.

- **Direct Interference:** Defendants went beyond mere disparagement; they issued direct orders to consumers to breach their relationship with Plaintiffs. Investigator Person explicitly instructed a patient: "You're going to need to . . . go back to the original pediatrician . . . and get that vaccine." This was a state agent commandeering a patient's medical choices to steer business away from Plaintiffs.

72.     As a direct and proximate result of this wrongful interference, Plaintiffs have suffered actual damages, including the loss of patients, the loss of fees for services rendered, and severe injury to their business reputation and goodwill.

**SIXTH CAUSE OF ACTION**

**Defamation / Slander Per Se (State Law Claim)**
**(Against Defendants in their Individual Capacities)**

73.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

74.     **False Statements of Fact:** Defendants published specific, false, and verifiable statements of fact about Plaintiffs to third parties and the public, including:

- **The "Fraud" List:** The publication of Dr. Ismail's name on the "School Vaccination Fraud Awareness" website constitutes a written statement (libel) that she has committed the crime of fraud.

- **The "Anti-Vax" Slander:** The oral statement by Defendant Person to Barbara Campbell—"Were you aware Dr. Ismail is against vaccines?"—constitutes a false statement of fact (Dr. Ismail runs a vaccination clinic) designed to impugn her professional judgment.

- **The "Null and Void" Lie:** The statement that Plaintiffs' medical work is "null and void" is a false statement regarding the legal and medical validity of Dr. Ismail's services.

75. **Publication:** Defendants published these statements to a wide audience:

- The website was published to the entire world via the internet and specifically directed to every school district in New York State.

- The oral statements were published to individual patients (e.g., Barbara Campbell) and potentially others contacted during the investigation.

76. **Actual Malice:** Defendants made these statements with actual malice, meaning with knowledge that they were false or with reckless disregard for whether they were false or not.

- Defendants knew Dr. Ismail was a licensed physician authorized to practice medicine.

- Defendants knew that no court or administrative body had made a finding of fraud against her.

- Defendants knew that calling a pediatrician "anti-vaccine" when she administers vaccines is patently false.

77. **Slander *Per Se*:** These statements constitute slander *per se* (and libel *per se*) because they fall into the specific categories of defamation for which damages are presumed:

- They charge Plaintiffs with a serious crime (fraud).

- They tend to injure Plaintiffs in their trade, business, or profession (medicine). Accusing a doctor of fraud and "anti-vaccine" bias strikes at the core of her professional competence and ethics.

78.    **Special Damages:** As a direct result of this defamation, Plaintiffs have suffered special damages, including the specific loss of patients who have transferred care, the loss of revenue from vaccination services, and the quantifiable diminution in the value of the medical practice.

### SEVENTH CAUSE OF ACTION

**Abuse of Process (State Law Claim)**
**(Against Defendants in their Individual Capacities)**

79.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs.

80.    **Regularly Issued Process:** Defendants issued a legal process, specifically the Subpoena Duces Tecum (Inv. No. DOH-0942(b)), directing Plaintiffs to produce 51 patient charts under penalty of law.

81.    **Intent to Do Harm:** Defendants issued this subpoena with the intent to do harm without excuse or justification. Their motive was not a legitimate investigation of facts, but rather to:

- Circumvent the legal counsel retained by Plaintiffs;

- Harass Plaintiffs by imposing a crushing administrative burden;

- Conduct a "fishing expedition" into 51 unrelated files to find new grounds for discipline; and

- Manufacture a pretext for the summary suspension of NYSIIS access when Plaintiffs lawfully objected.

82.    **Use in a Perverted Manner:** The crux of this tort is the perversion of the process after issuance. Defendants perverted the subpoena power by utilizing a general administrative statute (PHL § 206) to investigate professional misconduct, solely to bypass the mandatory statutory safeguards of PHL § 230 (specifically the rights to notice, an interview, and confidentiality).

- Using a "public health" subpoena to conduct a "professional discipline" audit is a collateral and improper use of process.

- Defendants further perverted the process by using the subpoena not to obtain evidence, but as leverage to publicly defame Dr. Ismail on the "Fraud" website before the return date of the subpoena had even passed.

83.    As a direct result of this abuse of process, Plaintiffs have suffered special damages, including the cost of legal counsel to defend against the defective process, the loss of business reputation, and severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court enter Judgment in their favor and against Defendants, granting the following relief:

A.    **Declaratory Judgment:** Declaring that Defendants' actions—including the publication of the "School Vaccination Fraud" list, the summary suspension of NYSIIS access, the issuance of the defective subpoena, and the spoliation of records—violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

B.    **Injunctive Relief:** Issuing a permanent injunction directing Defendants to: Immediately remove Plaintiffs' names from the "School Vaccination Fraud Awareness" website and any similar public listings; Immediately reinstate full NYSIIS access for Dr. Shareen Ismail, The Alexandre Centre for Children's Health, and all employed staff; Cease and desist from all contact with Plaintiffs' patients and employees outside of formal legal channels; and Restore the "wiped" immunization records to the NYSIIS database.

C.    **Compensatory Damages:** Awarding Plaintiffs compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial for the destruction of their medical practice, loss of revenue, reputational harm, and emotional distress.

D.    **Punitive Damages:** Awarding punitive damages against Defendants James V. McDonald, Joseph A. Giovannetti, Jennifer Person, and John Does 1-5 in their individual capacities, for their malicious, reckless, and callous indifference to Plaintiffs' federally protected rights.

E.    **Attorneys' Fees:** Awarding Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

F.    **Other Relief:** Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand trial by jury for all issues so triable.

Dated: November 24, 2025

Respectfully submitted,

**Davenport Law PLLC**

*/s/ Chad A. Davenport*

Chad A. Davenport, Esq.
*Attorney for Plaintiff*
Davenport Law PLLC
6384 Deanna Drive
Hamburg, NY 14075
(716) 217-0328
cdavenport@davenport.law