UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAREEN ISMAIL, M.D., and THE ALEXANDRE
CENTRE FOR CHILDREN'S HEALTH (ISMAIL
MEDICINE PLLC),

                                      *Plaintiff*,

-against-

NEW YORK STATE DEPARTMENT OF HEALTH,
JAMES V. MCDONALD, JOSEPH A. GIOVANNETTI,
JENNIFER PERSON, and JOHN DOES 1-5,

                                      *Defendants*.

5:25-CV-01653

MAD/TWD

**DECLARATION OF
JOSEPH GIOVANNETTI**

---

**JOSEPH GIOVANNETTI, ESQ.**, declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Director of the Bureau of Investigations within the Division of Legal Affairs at the New York State Department of Health ("DOH" or "Department"). As such, I oversee operations within DOH's Bureau of Investigations and supervise its staff, including Investigator Jennifer Person ("Inv. Person"). I am familiar with the facts set forth herein based upon my personal knowledge, information contained in the investigative files of the Bureau of Investigations, or upon information and belief.

2. Through my employment at DOH, I have approximately five years of experience leading investigations of fraud and other misconduct involving vaccines, vaccinations, and immunization records. Beginning in January 2021, I led New York's Vaccination Complaint Investigations Team, a task force established to investigate complaints of fraud involving the

1

State's COVID-19 Vaccination Program. Since September 2023, I have been in charge of the Bureau of Investigations, a unit responsible for conducting a broad range of investigations including, but not limited to, those involving pediatric vaccination fraud.

3. I am an attorney licensed to practice law in New York and have been for over 13 years. Prior to my work with DOH, I served as Special Counsel to the Commissioner and Chief of Staff at the New York State Department of Transportation. Before that, I served as an Assistant United States Attorney in the Criminal Division of the United States Attorney's Office in the Northern District of New York. After graduating from law school in June 2011, I began my legal career as an Assistant District Attorney at the Manhattan District Attorney's Office.

### New York State's Immunization Information System (NYSIIS)

4. New York's Public Health Law ("PHL") § 2168 requires DOH to maintain a statewide "electronic immunization information system" that is "capable of collecting, storing, and disclosing the [ . . .] records of vaccinations received by persons under nineteen years of age."

5. Healthcare providers authorized to administer vaccinations are required to report all immunizations for children under nineteen (19) years old to the New York State Immunization Information System ("NYSIIS") within fourteen days of administration per PHL § 2168(3)(a). Once submitted, the information is used by medical professionals, public-health officials, school administrators, and other authorized NYSIIS users responsible for reducing illness, disability, and death caused by vaccine-preventable disease. As an authorized user of NYSIIS, schools have access to the system for the "purpose of verifying [students'] immunization status for eligibility for admission." PHL § 2168(8)(d).

6. PHL §§ 2168(1), (5), and (13) explicitly charge the Department with implementing and maintaining the NYSIIS database. The Department has a legal obligation and public-health

2

objective to protect the integrity of NYSIIS and enforce the laws and regulations applicable to its use. *See* PHL 206(1)(f) ("The commissioner shall … enforce the public health law."). The Department is empowered to use investigation and enforcement authority to ensure that vaccination records reported to NYSIIS are legitimate. *See*, *e.g.*, PHL §§ 12-a(1), 206(1)(f), 2168(5)(c), and 2168(9). Additionally, the Commissioner is authorized to suspend user access to the system in his sole discretion. *Id.* at § 2168(9). Further, the Commissioner is authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "provision for orderly implementation and operation of the statewide immunization information system, including the method by which each category of authorized user may access the system" (*Id.* at § 2168(13)).

7. Neither the statutes nor the regulations suggest any limitation to the Commissioner's discretion in such matters. For instance, DOH is not subject to any particular standards before commencing an investigation into the validity of provider entries into NYSIIS or making a determination to suspend or to terminate a user's access to NYSIIS, nor is it limited in the evidence that it may consider before making such a determination. The Department is also not required by the PHL to provide notice of any investigation or of any decision to suspend or to terminate a user's NYSIIS access, to provide any hearing to a user before his or her access is suspended or terminated, nor is it required to articulate the basis for any such decision.

8. All authorized users of NYSIIS must sign the NYSIIS User Agreement ("User Agreement"), acknowledging that they have read, understood and agree to abide by its terms. A true and accurate copy of the NYSIIS User Agreement is attached hereto as **Exhibit A**.

9. In Part 1, the User Agreement states the following: "This agreement represents a commitment by the authorized user to abide by the terms of Public Health Law, Title 6, Article

3

2168, and the provisions of 10 NYCRR (New York Code of Rules and Regulations), Section 66-1.2 (to be adopted) related to [NYSIIS]." *Id.*

10. Pursuant to the User Agreement, all authorized users of NYSIIS agree not to enter inaccurate data intentionally or falsify data currently in NYSIIS. *Id.*

11. In signing the User Agreement, users agree that they understand that "any violation of these provisions will result in termination of access privileges." *Id.*

12. Pursuant to PHL § 2168(9), DOH "may refuse access to the statewide immunization information system based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation."

13. In addition to the Department's mandate to establish and maintain the NYSIIS database and ensure that providers are fulfilling their statutory obligation by accurately reporting pediatric vaccinations to that database, the Department of Health has an overarching obligation to "establish and operate such adult and child immunization programs as are necessary to prevent or minimize the spread of disease and to protect the public health. Such programs may include […] quality assurance for immunization related activities and other immunization related activities." *See* PHL § 206(1)(l).

14. DOH's efforts to identify and correct inaccurate vaccination records and to identify and invalidate fraudulent vaccination records is an important part of this statutory responsibility.

**Initiation of the DOH Investigation Regarding Immunization Records Submitted by Dr. Shareen Ismail to Her Child's School**

15. The Department maintains an email address (stopvaxfraud@health.ny.gov) that the public may use to report cases of suspected vaccine fraud. On July 8, 2025, the Department

received an email via stopvaxfraud@health.ny.gov with information that called into question the validity of certain vaccination records associated with Dr. Shareen Ismail.

16. The email, sent by administrators of a New York school, indicated that a student's parent, Dr. Shareen Ismail, had previously declined to enroll her child into the school due to the school's immunization requirements, which comply with PHL § 2164. Dr. Ismail later decided to enroll her child into the school and submitted immunization documents upon initial enrollment in 2022. In October of 2024, Dr. Ismail submitted updated immunization records to the school. Upon review and comparison of these documents, the school identified inconsistencies in the administration dates for multiple vaccinations. Further, in May of 2025, the student informed a teacher that he had never been vaccinated, reportedly stating, "I've never had a shot in my whole life." In its outreach to DOH, the school noted that the teacher knows the student well and believes his statement to be truthful. Lastly, the school described how the immunization records submitted by Dr. Ismail did not include a physician's name, which gave the school pause under the circumstances. In response, the Department began an investigation into the student's immunization records.

17. Around the same time that the Department received information regarding the vaccination records of Dr. Ismail's son, Dr. Ismail began contacting the Department regarding immunizations for her son that had been reported to NYSIIS. Dr. Ismail's outreach to Department staff across multiple divisions was eventually routed to my unit.

18. On September 23, 2025, I emailed Dr. Ismail to inform her that an investigation had been opened and instructed her to direct all communication to me. I also informed her that Inv. Person and I would contact her and that we would give her an opportunity to answer questions and

provide materials that she believed would be helpful to our investigation. A true and accurate copy of the email exchange is attached hereto as **Exhibit B**.

19.     On September 24, 2025, at my direction, Inv. Person contacted Dr. Ismail by phone and scheduled an in-person interview with her at the Alexandre Centre for Children's Health ("Alexandre Centre"), the Fayetteville, New York, medical practice that she owns and operates, for September 30, 2025.

20.     On September 25, 2025, I received an email and attachment from Chad Davenport regarding the Department's scheduled meeting with Dr. Ismail. The attachment explained that Mr. Davenport represents Shareen Ismail and that Mr. Davenport will be present at any meeting to represent her. The attachment further explained that Mr. Davenport had a conflict during the scheduled September 30, 2025, meeting and requested that it be rescheduled. A true and accurate copy of the email and attachment is attached hereto as **Exhibit C**.

21.     Inv. Person and I had made arrangements to travel to Onondaga County in order to interview Dr. Ismail. As part of that plan, we conducted other interviews in the area relevant to the investigation.

22.     On September 29, 2025, as part of the investigation, Inv. Person and I visited an urgent care facility in Rochester through which the majority of the student's vaccinations had been reported to NYSIIS. We conducted interviews with staff who told us that Dr. Ismail had been an employee of the facility, but that she was never authorized to enter vaccination information into NYSIIS on behalf of the practice, that the student had never been a patient at the practice, and that, as an urgent care, the practice does not administer routine pediatric vaccinations and does not enter

6

historical vaccination information[1] into NYSIIS. Therefore, the urgent care facility had no record of the student's purported vaccinations that had been reported to NYSIIS through its NYSIIS account, nor any record of having reported those vaccinations. Further, the only staff member authorized to enter vaccination information on behalf of the practice denied having entered those that appear on the student's records. More disturbingly, staff at the Rochester urgent care facility told us that while she was employed by the urgent care, Dr. Ismail had asked staff on at least two separate occasions if they could produce fraudulent vaccination records so that Dr. Ismail's son could attend school. Staff also explained that Dr. Ismail had been vocal regarding her personal views and opinions against vaccines, and that the practice had received complaints from patients and negative patient reviews regarding Dr. Ismail as a result.

### DOH Investigation of the Alexandre Centre for Children's Health

23.    The Department's investigation into vaccination records that Dr. Ismail submitted for her son has a direct and natural nexus with the investigation of the Alexandre Centre. Four vaccinations for Dr. Ismail's son had been reported to NYSIIS by the Alexandre Centre using the Alexandre Centre's NYSIIS account and NYSIIS access. Given what the investigation had uncovered regarding all other purported vaccinations administered to that child and fraudulently reported to NYSIIS, the Department had reason to believe that those vaccinations, too, had never actually been administered and that the Alexandre Centre's NYSIIS access was being abused for purposes of vaccination fraud, at least with regard to vaccinations purportedly administered to that child.

---

[1] Entry of historical vaccination information refers to reporting to NYSIIS a record of immunization administered by another provider at an earlier date which was not previously reported.

24.     Beyond what had been determined about Dr. Ismail's own conduct regarding her son's purported vaccination records, the background investigation into the Alexandre Centre identified additional red flags and indicia of vaccination fraud. These included the language that the practice used to advertise itself, some of which the Department has come to recognize as "dog whistles" used by vaccination fraudsters as signals to potential clients. On its homepage, the Alexandre Centre describes itself as practicing "holistic medicine, integrative medicine, allopathic medicine, homeopathy, food is medicine, complementary medicine, alternative medicine, naturopathy, [and] Ayurveda." Further, the Alexandre Centre does not accept insurance, making it curious that patients would pay out-of-pocket for immunizations that are universally covered by health insurance and otherwise available for free through programs administered by the Department and local health departments throughout New York.

25.     Regarding its vaccination practice in particular, the Alexandre Centre website explains that "[t]he independent physicians at the Alexandre Centre believe in informed consent for every family including complete discussion of risks, benefits or any adverse effect prior to administering any pharmaceuticals. We believe in the rights of parents to informed, comprehensive and free health decisions regarding their child's care. Pediatricians providing services at the Alexandre Centre make an extra commitment to provide extensive counseling on vaccines and to *accommodate any wishes and concerns regarding childhood vaccinations*." (emphasis added). Moreover, on its Facebook page, the Alexandre Centre advertises "vaccine detoxification," which, in addition to being medically dubious (or worse), is a service at least ostensibly at odds with the valid administration of vaccines.

8

**DOH Subpoena to the Alexandre Centre for Children's Health**

26. Since August 3, 2020, I have been authorized by the Commissioner of Health, pursuant to PHL § 12-a, to compel the attendance of witnesses and the production of books, papers, and records concerning all matters within the jurisdiction of DOH. A true and accurate copy of the Designation of Investigative Authority addressed to me and others whose names have been redacted is attached hereto as **Exhibit D**.

27. On September 30, 2025, as part of the investigation of the Alexandre Centre and its vaccination and vaccination-reporting practices, I issued a subpoena directed to the Alexandre Centre. The subpoena was served on Dr. Ismail and the Alexandre Centre's practice manager, Renee Callahan, by Inv. Person that same day. A true and accurate copy of the subpoena, excluding the addendum containing the names of individual patients, is attached hereto as **Exhibit E**.

28. Inv. Person knew that Dr. Ismail was represented by counsel for purposes of the Department's investigation of her child's vaccination records. For that reason, Inv. Person made no attempt to interview or otherwise engage Dr. Ismail beyond handing her the subpoena and making her aware that it was a subpoena being served on the Alexandre Centre by the Department.

29. The subpoena sought, inter alia, Plaintiffs' purchasing records of ten (10) specific vaccines, and immunization records of fifty-one (51) children whose purported vaccinations had been reported to NYSIIS by the Alexandre Centre, including Dr. Ismail's own child. *Id*. All of the requested documents relate to and arise from our investigation of Dr. Ismail's and the Alexandre Centre's vaccination practices and compliance with Public Health laws and regulations. The subpoena gave Plaintiffs until October 15, 2025, to produce the responsive records. *Id*.

30. On October 1, 2025, I emailed Mr. Davenport informing him that the Department was investigating the NYSIIS reporting of the Alexandre Centre and that the subpoena had been

served. I attached a courtesy electronic copy of the subpoena to the email. A true and accurate copy of the email is attached hereto as **Exhibit F**.

31. Plaintiffs ignored the October 15, 2025, deadline and did not produce any records to the Department.

32. On October 20, 2025, five days after the subpoena's compliance deadline, I received an email from Mr. Davenport. This email advised that Davenport Law PLLC represents the Alexandre Centre in addition to representing Dr. Ismail in connection with DOH's investigations, and it included a Formal Objection to the subpoena in its entirety on the grounds that it "is invalid, unenforceable, relies upon improper statutory authority circumventing the requirements of Public Health Law § 230, makes grossly overbroad and impermissible demands for privileged patient records, and appears to be issued in bad faith." A true and accurate copy of the email and Formal Objection is attached hereto as **Exhibit G**.

33. On October 27, 2025, I responded to Mr. Davenport's email, acknowledging receipt of the formal objection and refusal to comply with the subpoena. In my response, I informed Mr. Davenport that the Department would not withdraw its lawful subpoena. A true and accurate copy of this email is attached hereto as **Exhibit H**.

34. Since the October 27, 2025, correspondence, there has been no further discussion between me and Mr. Davenport regarding the subpoena, nor have any further steps been taken by DOH with respect to the subpoena.

**Suspension of the Alexandre Centre for Children's Health's Access to NYSIIS**

35. On October 1, 2025, the Department suspended the Alexandre Centre's NYSIIS account. In the October 1, 2025, email to Mr. Davenport referenced above, I had also informed him that the Alexandre Centre's NYSIIS account had been suspended effective immediately.

10

**Exhibit F.** At that point, and as described in detail above, the Department's investigation had determined substantial information casting serious doubt on the credibility of Dr. Ismail related to vaccination reporting. Accordingly, in the interest of ensuring the integrity of NYSIIS and protecting public health, the Department suspended the Alexandre Centre's NYSIIS account pending further investigation.[2]

36.   Full suspension was authorized by, among other things, the NYSIIS statute and other provisions of the PHL, and was consistent with the notice provided to Dr. Ismail and the Alexandre Centre in the NYSIIS User Agreement and other agreements to the effect that DOH retained sole discretion to suspend or to revoke a user's access.

### Posting on the DOH Website Regarding Dr. Ismail and
### The Alexandre Centre for Children's Health

37.   On October 1, 2025, the Department added to a page on its website titled "School Vaccination Fraud Awareness,"[3] under a section advising schools to "[b]e aware when reviewing school vaccination records."[4] As to Dr. Ismail and the Alexandre Centre, that posting stated concisely:

> **Shareen Ismail, MD (Alexandre Centre for Children's Health)** – Currently suspended from using the New York State Immunization Information System as of 9/30/25. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

---

[2] As the owner and operator of the Alexandre Centre, Dr. Ismail is a user under the Alexandre Centre's NYSIIS account. Though there are other users under the Alexandre Centre's NYSIIS account, the suspension of the practice's account was necessary as the practice generally uses an Electronic Health Record Hub (EHR Hub) that automatically reports immunization data directly to NYSIIS; therefore, even putting aside the fact that the practice is owned and operated by Dr. Ismail, it would be ineffective to suspend the NYSIIS account of an individual user from the Alexandre Centre as that user would still be able to enter vaccination records into NYSIIS by entering them through the EHR Hub.
[3] https://www.health.ny.gov/prevention/immunization/schools/fraud.htm.
[4] DOH and schools routinely use this website as the primary and most reliable way of directing schools as to their frontline administration of PHL § 2164.

11

38. This time-sensitive communication was made principally to alert school officials who are responsible for the collection of immunization records from school-age children and their parents that DOH had suspended the Alexandre Centre's NYSIIS access and to alert them that paper-only records of vaccinations administered after September 30, 2025, are not to be accepted by the schools as sufficient proof of such vaccinations.

39. Like DOH's decision to suspend the Alexandre Centre's database access, this communication was intended to protect New York residents, and particularly school communities, from the potential spread of infectious diseases and to help fulfill DOH's regulatory and enforcement responsibilities under PHL §§ 2164 and 2168.

40. Each decision concerning Dr. Ismail and the Alexandre Centre was made carefully and in light of all of the information available to DOH at that point in the investigation. The investigation has revealed an exigent and ongoing risk to the public health by Dr. Ismail's conduct that, in DOH's judgment, could be mitigated by the prompt administrative action taken by suspending NYSIIS access and posting the fact of the suspension and the directive to schools not to accept paper-only records of immunization from this provider.

### Discussion Between Inv. Person and Barbara Campbell

41. On October 6, 2025, I forwarded an email to Inv. Person that I had received from the Program Manager for NYSIIS stating that an individual called and expressed concerns about her child's vaccination records. The individual had provided her phone number, and I directed Inv. Person to contact this individual regarding her concerns.

42. My understanding is that when Inv. Person called this individual back, the individual identified herself as Barbara Campbell, and Inv. Person and Ms. Campbell engaged in a discussion regarding Ms. Campbell's interaction with Dr. Ismail and the Alexandre Centre.

### The Invalidation of Vaccination Information for Dr. Ismail's Son
### and its Subsequent Deletion from NYSIIS

43. Following discussions with the above-mentioned Rochester urgent care facility staff (as discussed above in paragraph 22), the Department had determined that all of the vaccination information for Dr. Ismail's son that had been reported to NYSIIS by way of the facility was invalid. Subsequently, on October 14, 2025, DOH deleted the twenty (20) purported doses reported by the facility from NYSIIS.

44. The following day, I sent an email to Mr. Davenport to inform him that these records had been deemed invalid by DOH, and had been deleted from NYSIIS, A true and accurate copy of this email is attached hereto as **Exhibit I**.

### DOH's Ongoing Investigations of Dr. Shareen Ismail and
### The Alexandre Centre for Children's Health[5]

45. The Department's investigations related to Dr. Ismail, her son's vaccination records, and the Alexandre Centre are ongoing. In addition, despite knowing that she is under investigation, Dr. Ismail has continued to commit additional acts that constitute vaccination fraud. Accordingly, the Department has gathered additional information supporting its concerns related to the Plaintiffs.

46. For instance, on or around November 12, 2025, after I informed Mr. Davenport that the twenty (20) purported doses reported to NYSIIS from the urgent care facility for Dr. Ismail's child had been deleted from NYSIIS and that printed copies of these deleted records are invalid

---

[5] DOH's investigations related to Dr. Ismail, her son's vaccination records, and the Alexandre Centre are ongoing. To the extent that the Court would like to learn additional details of the DOH investigations, the Defendants will submit such information for in camera review.

and may not be used for the purposes of satisfying PHL § 2164, the Department was informed by the Onondaga County Health Department (the "County") that Dr. Ismail presented the County with an unattributed print-out of those same purported vaccinations and asked the County to enter these doses into NYSIIS, which the County did. Dr. Ismail did not inform the County that those records had been deleted from NYSIIS as fraudulent, or that she and her attorney were engaged and in communication with the Department regarding an open and active investigation of those purported vaccinations.

47. Additional information gathered by DOH also includes obtaining a copy of the Consent Final Judgment of Dissolution of Marriage related to Shareen Ismail dated April 29, 2020; the Department obtained this from to the Jamesville-DeWitt Central School District. A true and accurate copy of the Consent Final Judgment of Dissolution of Marriage, with certain personal information redacted, is attached hereto as **Exhibit J**. Exhibit A to the Consent Final Judgment of Dissolution of Marriage is identified as the Parenting Plan, and Clause XVII(B) of the Parenting Plan indicates that "the parties agree at this time that it is not in the best interest to vaccinate the child." The child identified in the Parenting Plan is the same child whose immunization records the Department began its investigation with. This Parenting Plan and records of purported vaccination for this child, which are records that Dr. Ismail is responsible for having twice entered into NYSIIS and which she has submitted to at least two schools in the Syracuse area, are in direct contradiction with one another.

48. The Department's additional findings also include evidence that Dr. Ismail sent fraudulent immunization records related to her child to the Florida Department of Health ("Florida DOH"). First, the Department has confirmed that the child received no vaccinations from the child's former pediatrician in Florida; there is a documented history of refusal of vaccination for

14

the child, including four declinations of recommended vaccinations signed by Dr. Ismail from March 15, 2019, through February 11, 2020. Additionally, the Department has confirmed that the child received no vaccinations from the Family Health Network's Pediatric & Family Practice in Cortland, NY ("Family Health Network"), where the child was seen from 2021 through 2024; at this practice, there is also a documented history of Dr. Ismail declining vaccinations for her child.

49. Despite this, the Department has obtained copies of immunization records from the Florida DOH that were sent by Dr. Ismail on November 12, 2025, with the request that these records be entered into Florida's Immunization Information System, FL SHOTS. The immunization records sent to Florida DOH included records that were purported to have been issued by the Family Health Network. Therefore, medical records from the child's former pediatricians and records of purported vaccination for this child presented to Florida DOH are in direct contradiction with one another.

50. In fact, a felony complaint charging Dr. Ismail with the felony of tampering with public records in the first degree was filed in DeWitt Town Court alleging that Dr. Ismail submitted to the Jamesville-DeWitt Central School District a forged instrument consisting of forged immunization records for her child, purportedly issued by the Family Health Network. In connection with the Felony Complaint, Dr. Ismail voluntarily surrendered to law enforcement on December 3, 2025, and was placed under arrest. True and accurate copies of the documents related to the arrest, including the Felony Complaint, which DOH received from the DeWitt Police Department, are attached hereto as **Exhibit K**.

51. Furthermore, the immunization records sent to Florida DOH also included the NYSIIS record of Dr. Ismail's son as it existed on September 22, 2025, which included the now-deleted NYSIIS records from the above-referenced Rochester urgent care facility. Again, Dr.

15

Ismail provided a government entity with these immunization records after I had informed her counsel (by way of an email on which she was cc-ed) that printed copies of the records are invalid and may not be used for purposes of satisfying PHL § 2164. Notably, the Department understands that in communication with Florida DOH, Dr. Ismail misrepresented herself and her child as Florida residents and used the address of a Jacksonville, Florida, home that the Department understands her to have sold years ago.

### Discussion Between DOH Investigators and Maria Petersen

52. To further the Department's investigations, at my direction, Inv. Person and another DOH investigator who reports directly to me, Investigator Kevin Ryan, traveled to the residence of an individual listed as a Registered Nurse on the Alexandre Centre's website, Maria Petersen. The Department was interested in speaking to Ms. Petersen as her name, but not her signature, appears on vaccination records from the Alexandre Centre for Dr. Ismail's child. When investigators made contact with Ms. Petersen, she stated that all questions from DOH should be directed to her lawyer, who she identified as being the same lawyer representing the Alexandre Centre; both DOH investigators then ceased the interview and left.

53. On November 15, 2025, I received an email from Mr. Davenport which included a formal Cease and Desist letter. As reflected in Mr. Davenport's email, the letter "demand[ed] that [DOH] **immediately** stop all forms of contact with any employee, nurse, or patient of The Alexandre Centre." (emphasis in original). The letter further demanded that all further communications be directed exclusively to Mr. Davenport's office. Additionally, the email advised that Mr. Davenport and the Plaintiffs were preparing to file a federal civil rights action and asked me to direct Mr. Davenport to the attorney who will be representing the Department in this forthcoming litigation. A true and accurate copy of this email is attached hereto as **Exhibit L**.

54. Given the threat of forthcoming litigation in Mr. Davenport's email, the Deputy Director of the Department's Bureau of Litigation, Danielle Rysedorph, responded on behalf of the Department through email on November 19, 2025. In her email, Ms. Rysedorph acknowledged the Department's understanding that Mr. Davenport represents Dr. Ismail and Ismail Medicine PLLC (d/b/a The Alexandre Centre for Children's Health) and asked Mr. Davenport to specify who else in particular he represents in the context of the Department's investigations by November 20, 2025. The email specified that the Department does not know Mr. Davenport to represent any patient/client of Dr. Ismail and Ismail Medicine PLLC, his actual engagement by particular patients being the only basis the Department can conceive of that Mr. Davenport would demand that investigative interviews of his clients' patients be arranged through him. A true and accurate copy of this email is attached hereto as **Exhibit M**.

55. Mr. Davenport did not provide the requested information about who, if anyone, he represents beyond Dr. Ismail and the Alexandre Centre. Instead, Mr. Davenport responded to Ms. Rysedorph on November 25, 2025, with an email advising that he filed a Complaint commencing this action and that he intended to file an application for an Order to Show Cause seeking a Temporary Restraining Order and Preliminary Injunction the following day. A true and accurate copy of this email is attached hereto as **Exhibit N**.

Dated: December 8, 2025

_____
JOSEPH GIOVANNETTI