UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

SHAREEN ISMAIL, M.D., and THE ALEXANDRE
CENTRE FOR CHILDREN'S HEALTH (ISMAIL
MEDICINE PLLC),

                                        *Plaintiff*,

        -against-

NEW YORK STATE DEPARTMENT OF HEALTH,
JAMES V. MCDONALD, JOSEPH A. GIOVANNETTI,
JENNIFER PERSON, and JOHN DOES 1-5,

                                        *Defendants*.

———————————————————————

5:25-CV-01653

MAD/TWD


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**


LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants New York State
    Department of Health, James V. McDonald,
    Joseph A. Giovannetti, and Jenifer Person*
The Capitol
Albany, New York 12224


M. Randolph Belkin
Assistant Attorney General, of Counsel
Bar Roll No. 505404
Telephone: (518) 776-2672
Email: randy.belkin@ag.ny.gov

Date: December 9, 2025

## Table of Contents

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY.................................................................................... 2

STATEMENT OF FACTS ..................................................................................... 3

    A.   The Statutory Scheme Authorizing Defendants to Protect the Health and Life of New York's Residents................................................................................................ 3

    B.   Facts at Issue in this Litigation ................................................................. 6

THE STANDARD FOR A MANDATORY PRELIMINARY INJUNCTION .......................... 11

ARGUMENT ................................................................................................... 13

    POINT I  PLAINTIFFS FAIL TO ESTABLISH THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ................................................................. 13

        A.   Plaintiff's Fourteenth Amendment Claims Fail ........................................ 13

            (1)     Plaintiffs have no property interest in NYSIIS or its content ............... 13

            (2)     Plaintiffs have no liberty interest in access to NYSIIS nor its content ................ 17

            (3)     DOH'S Investigation does not Implicate Due Process ......................... 18

        B.   Plaintiff's First Amendment Retaliation Claim Fails ................................. 19

        C.   Plaintiff's Fourth Amendment Claim Fails.............................................. 22

    POINT II  PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM .................. 23

    POINT III  THE PUBLIC INTEREST AND BALANCE OF EQUITIES WEIGH HEAVILY AGAINST GRANTING A PRELIMINARY INJUNCTION ................................................... 26

    POINT IV  THE COURT SHOULD ALSO DENY PLAINTIFFS' MOTION TO REQUIRE DEFENDANTS TO MODIFY THE DOH WEBSITE POSTING........................................... 28

    POINT V  A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE ADEQUATE REDRESS IN NEW YORK STATE COURTS ............ 30

CONCLUSION................................................................................................. 31

i

## Table of Authorities

## Cases                                                                Page(s)

*Alicea v. City of Bridgeport*,
    2025 WL 1982127 (2d Cir. July 17, 2025).................................................................. 22-23

*Ass'n of Jewish Camp Operators v. Cuomo*,
    470 F. Supp. 197 (N.D.N.Y. 2020)..................................................................14, 15, 18

*Baptist v. Wheeler*,
    2025 WL 3120480 (N.D.N.Y November 7, 2025) ...........................................19, 21

*Barnes v. Pilgrim Psychiatric Ctr.*,
    860 F.Supp.2d 194 (E.D.N.Y.2012) ...............................................................22

*Blakeman v. James*,
    2024 WL 3201671 (E.D.N.Y. 2024)................................................................24

*Board of Regents v. Roth*,
    408 U.S. 564 (1972)..........................................................................13, 22

*Calicchio v. Sachem Cent. Sch. Dist.*,
    2015 WL 5944269 (E.D.N.Y. 2015)................................................................15

*Castle Rock v. Gonzalez*,
    545 U.S. 748 (2005)..........................................................................14, 16

*Citibank v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985)...................................................................23, 26

*Conn v. Gabbert*,
    526 U.S. 286 (1999)..............................................................................18

*Diblasio v. Novello*,
    413 Fed. Appx. 352 (2d Cir. 2011)..............................................................19, 30

*eBay Inc. v. Merc Exchange, L.L.C.*,
    547 U.S. 388 (2006).............................................................................13

*Findlay v. MTA Bus Co.*,
    184 A.D.3d 531 (1st Dept. 2020)................................................................15

1

*Fishermen's Finest v. United States*,
  155 Fed. Cl. 576 (2021) ................................................................................16

*Garland v. New York City Fire Department*,
  574 F. Supp. 3d 120 (E.D.N.Y. 2021) ..........................................................28

*Giglio v. Dunn*,
  732 F.2d 1133 (2d Cir. 1984).........................................................................30

*Gilbert v. Homar*,
  520 U.S. 924 (1997)........................................................................................30

*Guettlein v. United States*,
  577 F. Supp. 3d 96 (E.D.N.Y. 2021) .................................................17, 18, 27

*Hamza v. Kotsidis*,
  2025 WL 3295404 (N.D.N.Y. November 26, 2025) .................................. 19-21

*Harlin Assocs. V. Vill. Of Mineola*,
  273 F.3d 494 (2d Cir. 2001)...........................................................................14

*Hodel v. Virginia*,
  452 U.S. 264 (1981)........................................................................................30

*Holt v. Contl. Group, Inc.*,
  708 F.2d 87 (2d Cir. 1983).............................................................................25

*In re Decker*,
  306 A.D.2d 796 (3d Dept. 2003) ...................................................................16

*ISS Action v. Port Authority*,
  161 Fed. Appx. 120 (2d Cir. 2005).................................................................16

*Kaluczky v. City of White Plains*,
  57 F.3d 202 (2d Cir. 1995).............................................................................15

*Kelly Kare, Ltd. v. O'Rourke*,
  930 F.2d 170 (2d Cir. 1991)..............................................................14, 16, 18

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*,
  2018 WL 2390125 (E.D.N.Y. May 25, 2018) .................................................12

*Leroy v. N.Y. City Bd. of Elections*,
  793 F. Supp. 2d 533 (E.D.N.Y. 2011) ............................................................22

*Litwin v. OceanFreight, Inc.*,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011).................................................................26

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001)..........................................................................30

*Maniscalco v. New York City DOE*,
    563 F. Supp. 3d 33 (E.D.N.Y. 2021) ...............................................................28

*Maple Avenue v. Town of North Haven*,
    924 F.Supp.2d 392 (D. Conn. 2013).................................................................14

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).......................................................................................30

*Mintz v. Chiumento*,
    724 F. Supp. 3d 40 (N.D.N.Y. 2024)..........................................................12, 26

*Neu v. Corcoran*,
    869 F.2d 662 (2d Cir. 1989)..........................................................................29

*New York v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)..........................................................................12

*New York v. U.S. Dept. of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020)............................................................................25

*Newell v. Holder*,
    *579 Fed. Appx. 53* (2d Cir. 2014) ................................................................15

*Paul v. Davis*,
    424 U.S. 693 (1976).......................................................................................29

*Pelt v. City of New York*,
    2013 WL 4647500 (E.D.N.Y. 2018)...............................................................22

*Plaza Health v. Perales*,
    878 F.2d 577 (2d Cir. 1989)......................................................................14, 16

*Romero v. Goldman Sachs Bank USA*,
    2025 WL 1918167 (S.D.N.Y. 2025).................................................................25

*Rosenbaum v. Atlas*,
    66 A.D.3d 576 (1st Dept. 2009)......................................................................16

*S&D v. Goldin,*
844 F.2d 962 (2d Cir. 1988)........................................................................................16, 18

*S.E.C. v. Jerry T. O'Brien, Inc.,*
467 U.S. 735 (1984)............................................................................................................19

*Sadallah v. City of Utica,*
383 F.3d 34 (2d Cir. 2004)...............................................................................................29

*Trump on the Ocean, LLC v. Ash,*
81 A.D.3d 713 (2d Dept. 2011) ......................................................................................25

*United States v. Ganias,*
755 F. 3d 125 (2d Cir. 2014)...........................................................................................23

*United States v. Jacobsen,*
466 U.S. 109 (1984)...........................................................................................................22

*United States v. Joseph,*
2024 WL 1827291 (2d Cir. 2024)...................................................................................15

*Walker v. NYS DOH,*
2025 WL 1786917 (E.D.N.Y. 2025)...............................................................................30

*Weinberger v. Romero- Barcelo,*
456 U.S. 305 (1982)...........................................................................................................27

*Winter v. NRDC, Inc.,*
555 U.S. 7 (2008).................................................................................................12, 27, 29

## Constitution

First Amendment .................................................................................................... 3, 14-16

Fourth Amendment .................................................................................................3, 16, 18

Fourteenth Amendment ...................................................................................... 3, 8-9, 14

## N.Y. State Statutes

N.Y. Public Health Law
§206..............................................................................................................................6

N.Y. Public Health Law §230 ........................................................................ 17, fn. 4

N.Y. Public Health Law §2164 ..............................................................................6

N.Y. Public Health Law §2168 ..................................................................... *passim*

## N.Y. Civil Practice Law & Rules

CPLR
   Article 78 ........................................................................................... 24-25

## State Regulations

10 NYCRR 66.1 ............................................................................... 5, 15, 16

5

## PRELIMINARY STATEMENT

Defendants New York State Department of Health ("DOH"), James V. McDonald, Joseph A. Giovannetti, and Jennifer Person ("Defendants") submit this memorandum in opposition to the motion submitted by Plaintiffs, Shareen Ismail, M.D. (hereafter "Ismail") and Ismail Medicine PLLC d/b/a Alexandre Centre for Children's Health  (hereinafter "Alexandre Centre"), seeking a preliminary injunction.

In the order set forth in the Complaint, Dkt. No. 1, Plaintiffs allege violations of their rights under the Fourteenth, First, and Fourth amendments to the United States Constitution and allege additional claims under New York State Law, including tortious interference with business relations, defamation/slander per se, and abuse of process.

Presently, the Plaintiffs seek a preliminary injunction (a) forbidding Defendants from maintaining the publication of Plaintiffs' names on DOH's "School Vaccination Fraud Awareness" website, (b) directing Defendants to immediately restore any immunization records deleted from the New York State Immunization Information System ("NYSIIS") database on or about November 12, 2025, and forbidding Defendants from "wiping" any further records, (c) directing Defendants to immediately reinstate full NYSIIS access for Plaintiffs and all employed staff, and (d) forbidding Defendants from contacting, harassing, interrogating, or threatening Plaintiffs' patients or employees outside of formal legal process directed through Plaintiffs' counsel. Dkt. No. 5. On December 2, 2025, the Court issued an Order to Show Cause (hereinafter "OSC") which provides a briefing schedule and sets December 11, 2025, at 10:00 a.m. as the return date and time. Dkt. No. 6.

The Plaintiffs' motion for a preliminary injunction should be denied in its entirety. First, Defendants lawfully exercised their discretion in suspending Plaintiffs' access to NYSIIS consistent with its ongoing investigation and acted in accordance with the New York State Public Health Law ("PHL") in twice deleting from NYSIIS vaccination information for Ismail's minor son. Second, Defendants acted in accordance and continue to act in accordance with New York State law in its ongoing investigation. Third, Defendants properly posted Plaintiffs' names to the School Vaccination Fraud Awareness website for the protection of the health of the public and more specifically, minor children. Fourth, Plaintiffs lack any property or liberty interest sufficient to trigger the protections of the Constitution in connection with the actions DOH took.

## PROCEDURAL HISTORY

The Complaint was filed with the Northern District of New York on November 25, 2025. Dkt. No. 1. On December 2, 2025, Plaintiffs filed the instant Motion and related papers for a preliminary injunction. Dkt. No. 5. The Court issued the OSC on December 2, 2025, setting a return date of December 11, 2025, and permitting Defendants to serve and file answering papers by December 9, 2025. Dkt. No. 6. The Court denied Plaintiff's *ex parte* motion for a temporary restraining order. *Id.*

Plaintiffs' complaint, Dkt. No. 1, disregarding hyperbole, contains limited factual allegations. *Id.* at ¶¶ 3-6, 25, 30, 40-41, 44-45. Plaintiffs argue that DOH and the individually named defendants, sued in their official capacity for injunctive relief, *id*. at ¶¶ 19-21, violated their rights and committed tortious conduct under State law by (a) placing Ismail's name on a public "School Vaccination Fraud Awareness" website accusing her of "vaccination fraud" on September 30, 2025, (b) suspending Ismail's and her clinic's access to NYSIIS, (c) issuing a subpoena and

harassing an employee of Alexandre Centre and threatening a private citizen (a patient) in the course of its investigation, (d) and wiping from NYSIIS  immunization records of Ismail's six year old son. *Id.*[1] The Complaint does not affirmatively state that Ismail's son was in fact vaccinated as required to attend grade school under New York State Law. Dkt. No. 1.

The Complaint alleges the following causes of action: 1. Constitutional violations of the Fourteenth Amendment (procedural due process rights), Dkt. No. 1 at p. 13, First Cause of Action, ¶¶ 47-53, 2. Fourteenth Amendment (substantive due process rights), *id.*, at p. 16, Second Cause of Action, ¶¶ 54-57, 3. First Amendment (retaliation), *id.*, at p. 18, Third Cause of Action, ¶¶ 58-62, and 4. Fourth Amendment (unreasonable searches and seizures.) *id.*, at p. 20, Fourth Cause of Action, ¶¶ 62-67. In addition, the Complaint seeks monetary damages against the individually named Defendants under New York State Law including for tortious interference, *id.*, at p. 22, Fifth Cause of Action, ¶¶ 68-72, defamation, *id.,* at p. 23, Sixth Cause of Action, ¶¶ 72-78, and abuse of process. *Id.* at p. 22, Seventh Cause of Action, ¶¶ 79-83.

The papers in support of the instant motion include the Declaration of Ismail in which she does not affirmatively state that her son was in fact vaccinated as required to attend grade school under New York StatebLaw. Dkt. No. 5-2.

## STATEMENT OF FACTS

A. <u>The Statutory Scheme Authorizing Defendants to Protect the Health and Life of New York's Residents</u>

The Commissioner of DOH is charged with broad responsibility for the "health and life of the

---

1 The individually named defendants are sued in their official capacities for declaratory relief and in their individual capacities for monetary damages.

people of the state," including responsibility for "the operation of public immunization programs," including "quality assurance for immunization related activities and other immunization related activities" (PHL § 206(1)(a)-(1)(L)). To carry out these responsibilities, in addition to the authority granted under the NYSIIS provisions below, "the commissioner and any person authorized by him may, without fee or hindrance, enter, examine and survey all grounds, erections, vehicles, structures, apartments, buildings and places" (*id.* at § 206(2)).[2]

The New York legislature directed the Commissioner to establish NYSIIS – and granted the Commissioner broad discretion to implement and maintain NYSIIS – by legislation that is codified at PHL § 2168. Section 2168 requires the Commissioner "to establish a statewide automated and electronic immunization information system that will serve and shall be administered consistent with" the public health (PHL § 2168(1)). In particular, the legislature intended for NYSIIS to "collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases" (*id.,* at § 2168(1)(a)). Section 2168 requires that "[a]ny health care provider who administers any vaccine to a person less than nineteen years of age shall report all such immunizations to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations" (*id.*, at § 2168(3)(a), 2168(5)(a)).

---

2 In addition, the Commissioner may "issue subpoenas, compel the attendance of witnesses and compel them to testify in any matter or proceeding before him" (*Id.* at § 206(4)(a)). Likewise, "[t]he commissioner, or any person designated by him may issue subpoenas and administer connection with any hearing or investigation under or pursuant to this chapter" (*Id.* at § 12-a(1)). On August 3, 2020, the Commissioner expressly authorized Director Giovannetti "to administer oaths, compel the attendance of witnesses and the production of books, papers and records and to take proof and testimony concerning all matters within the jurisdiction of the New York State Department of Health." Giovannetti Decl., at Exhibit D.

Section 2168 requires the prompt reporting of accurate information. "[NYSIIS] shall serve as a means for authorized users to receive prompt and accurate information, as reported to the system, about the vaccines that the registrant has received" (*id.,* at § 2168(3)(c)). This includes the reporting of specific data elements and any other information requested by DOH: "[t]he information provided to the system shall include the national immunization program data elements and other elements required by the commissioner" (*id.* at § 2168(5)(a)). In addition, Section 2168 provides that "[a]ll health care providers shall provide the department with additional or clarifying information upon request" (*id.*, at § 2168(5)(c)).

The Commissioner is authorized to suspend access to the system in his sole discretion: "The commissioner may refuse access to [NYSIIS] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation" (*id.* at § 2168(9)). Further, the Commissioner is authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "provision for orderly implementation and operation of [NYSIIS], including the method by which each category of authorized user may access the system" (*id.*, at § 2168(13); *see also* 10 NYCRR 66-1.2(e) (requiring, among other things, that "[e]ach person seeking access to NYSIIS must submit a completed application for access").

Thus, DOH requires, among other things, that the applicant for NYSIIS access complete a training course and consent to the terms of and sign the "NYSIIS User Agreement" before DOH determines whether to grant the provider access (*see* Dorabawila Dec., ¶3). No provider or other user is entitled to NYSIIS access, and it is within DOH's sole discretion whether to grant such access.

New York's Public Health Law mandates the immunization of school-age children (under

5

the age of nineteen) against certain vaccine-preventable illnesses, such as poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus influenzae type b (Hib), pertussis, tetanus, pneumococcal disease, and hepatitis B, in order to attend school (*see* PHL § 2164). School administrators are required to inform the parents of students that immunizations are required for admission; and school administrators are prohibited from permitting admission of unvaccinated children into schools (*id.* at § 2164(6)-(7)). Schools are required to provide DOH proof of compliance with these provisions (*id.* at § 2164(11)). Healthcare practitioners are required to report such immunizations "in a format prescribed by the Commissioner" (*id.* at § 2168(3)(a)-3(b)(i)).

Facts at Issue in this Litigation

Vajeera Dorabawila, Ph.D. is the Director of the Bureau of Surveillance & Data Systems, Division of Epidemiology at DOH and oversees the NYSIIS database. Dorabawila Dec., ¶¶ 1, 2. The records DOH maintains reflect that on June 18, 2020, as a condition of her access to New York State's Health Provider Network, Ismail signed the "New York State Department of Health, HPN Agreement, Medical Practice Agreement and Account Request." Dorabawila Dec., ¶ 8, *see*, Exs. B-C thereto. Thereafter, Ismail completed the application process, consented to the terms of and signed the NYSIIS User Agreement, and completed her NYSIIS training on September 8, 2022. *Id.*, ¶ 7. Her NYSIIS account was created on September 9, 2022. *Id.* When Ismail was granted access to NYSIIS, she was associated with an existing NYSIIS Organization (Pediatric Urgent Care of Rochester) but requested, on September 16, 2024, a new NYSIIS organization account under the name of the Alexandre Centre which was granted on even date therewith. *Id.*, ¶ 7. The NYSIIS User Agreement obligates Ismail, "to abide by the terms of Public Health Law, Title 6, Article 2168, and the provisions of 10 NYCRR (New York Code of Rules and Regulations), Section 66-1.2". Dorabawila Dec., at Ex. A.

The User Agreement provides that "any violations of these provisions will result in termination of access privileges" *Id.* at ¶ 9.[3]

DOH maintains an email address (stopvaxfraud@health.ny.gov) that the public may use to report cases of suspected vaccine fraud. Giovannetti Decl., ¶ 15. On July 8, 2025, DOH received an email via stopvaxfraud@health.ny.gov with information that called into question the validity of certain vaccination records associated with Ismail's son. *Id.* At around the same time that DOH received the aforesaid email regarding Ismail's son's vaccination records, Ismail began contacting DOH across multiple divisions regarding immunizations for her son that had been reported to NYSIIS. *Id.*, at ¶ 17. The matter was referred to DOH's Bureau of Investigations within the Division of Legal Affairs, the Director of which is Joseph Giovannetti. *Id.*, at ¶¶ 1, 17. Giovannetti's background in fraud investigation and as an attorney licensed to practice law in New York State is set forth in his Declaration. *Id.*, at ¶¶ 2, 3.

Based on the information Giovannetti received, on September 23, 2025, he emailed Ismail to inform her that an investigation had been opened and instructed her to direct all communication to him. *Id.*, at ¶ 18. He also informed her that DOH investigator Person (a named defendant herein) would contact her and that Ismail would be provided with an opportunity to answer questions and provide materials that she believed would be helpful to the investigation. *Id.* Person contacted

---

3 Separately, on June 18, 2020, as a condition of her access to the State's Health Provider Network, Ismail agreed to the terms of the "New York State Department of Health, HPN Document, Medical Practice Agreement and Account Request" (the "HPN Agreement," Dorabawila Decl., at Exs. B-C. Section VI of the HPN Agreement obligates the user to "cooperate" with DOH in any "investigations" concerning the State's databases. *Id.* Section V provides that "[a]bsent an appropriate response to account violations, user account privileges will be deleted upon a first offense," and Section VII provides that "[a]ccess to [the DOH] secure website is a privilege that may be revoked temporarily or permanently when violations of these security policies occur" (*Id.*)

Ismail by telephone and scheduled an in-person interview with her at the Alexandre Centre for September 30, 2025. *Id.,* at ¶ 19. On September 25, 2025, Giovannetti received an email and attachment from Chad Davenport (Plaintiffs' attorney) regarding DOH's scheduled meeting with Ismail; the email's attachment explained that Davenport represents Ismail and that he would be present at any meeting but due to a conflict in his schedule, Davenport requested the rescheduling of the meeting set for September 30, 2025. *Id.,* at ¶ 20.

Beyond seeking to meet with Ismail, the investigation also included a site visit to an urgent care facility in Rochester, New York; the majority of Ismail's son's vaccination records had been reported to NYSIIS from this facility. *Id.,* at ¶ 22. Interviews were conducted with staff who told DOH investigators that Dr. Ismail had been an employee of the facility, but that she was never authorized to enter vaccination information into NYSIIS on behalf of the practice, that Ismail's son had never been a patient at the practice, and that, as an urgent care, the practice does not administer routine pediatric vaccinations and does not enter historical vaccination information into NYSIIS. *Id.* The urgent care facility had no record whatsoever of Ismail's son's purported vaccinations that were reported to NYSIIS through its NYSIIS account, nor any record of having reported those vaccinations. *Id.* The only staff member at the urgent care authorized to enter vaccination information  denied having entered Ismail's son's records of vaccinations. *Id.* Staff at the urgent care also advised the DOH investigators that during Ismail's employment at that facility, she had asked staff on at least two separate occasions if they would produce fraudulent vaccination records so that Ismail's son could attend school. *Id.* Staff further advised that Ismail had been vocal regarding her personal views and opinions against vaccines, and that the urgent care had received complaints from patients and negative patient reviews for Dr. Ismail because of this. *Id.*

In addition, four vaccinations for Dr. Ismail's son had been reported to NYSIIS by the Alexandre Centre using the Alexandre Centre's NYSIIS account and NYSIIS access. *Id.,* at ¶ 23. Given what the investigation had uncovered regarding all other purported vaccinations administered to Ismail's son and fraudulently reported to NYSIIS, DOH had reason to believe that those vaccinations, too, had never actually been administered and that the Alexandre Centre's NYSIIS access was being abused for purposes of vaccination fraud, at least with regard to vaccinations purportedly administered to that child. *Id.* The evidence DOH had marshalled thus far was further enhanced through background investigation into the Alexandre Centre which presented additional red flags to Giovannetti. *Id.,* at ¶¶ 24, 25.

On September 30, 2025, DOH served a subpoena on the Alexandre Centre as authorized pursuant to PHL § 12-a, seeking, among other things, Plaintiff's purchase records for ten specific vaccines, and immunization records of fifty-one (51) children whose purported vaccinations had been reported to NYSIIS by the Alexandre Centre. *Id.,* at ¶¶ 27-29. A courtesy copy of the subpoena was emailed to Davenport by Giovannetti. *Id.,* ¶ 30. The subpoena was returnable on October 15, 2025, and through the present the Alexandre Centre, through counsel, has refused to comply. *Id.* at ¶¶ 31-34.

On October 1, 2025, DOH suspended the Alexandre Centre's NYSIIS account and advised Davenport of the action it took. *Id.* at ¶ 35. Also on October 1, 2025, DOH added Ismail and the Alexandre Centre to its School Vaccination Fraud Awareness website to alert school officials that DOH had suspended Plaintiffs' access to NYSIIS and to alert them that paper-only records of vaccinations administered after September 30, 2025, are not to be accepted. *Id.* at ¶¶ 37-40.

On October 6, 2025, at the direction of Giovannetti, Person spoke by telephone with

9

Barbara Campbell following Campbell's outreach to DOH's Center for Community Health. *Id.,* at ¶¶ 41, 42; Person Decl., at ¶ 3. Campbell advised Person that she was told by her child's school nurse that the Alexandre Centre was no longer able to vaccinate her child. *Id.,* at ¶ 4. Campbell pressed Person on whether her child had been given something that was not a legitimate vaccine and Person stated only that the Alexandre Centre's NYSIIS access was suspended as part of an investigation. *Id.*, at ¶ 5. Campbell did not advise Person that she was represented by counsel. *Id.*, at ¶ 5.

Through its ongoing investigation, DOH determined that all of the vaccination information for Ismail's son that had been reported to NYSIIS by way of the afore-referenced urgent care facility was in fact invalid, and on October 14, 2025, DOH deleted the twenty purported doses reported by the facility to NYSIIS while also advising Davenport it had done so. *Id.* at ¶ 43.

On November 14, 2025, Person and another DOH investigator, Kevin Ryan, visited Maria Peterson's residence seeking to interview her. Giovannetti Decl., at ¶¶ 51, 52; Person Decl., at ¶ 8. Petersen is listed on the Alexandre Centre's website as a registered nurse. Person Decl., at ¶ 8. Person and Ryan knocked on Petersen's door and she greeted them. *Id.* at ¶ 9. Person advised Petersen that she had questions about her employment with the Alexandre Centre and Petersen responded that all questions could go to the lawyer for the Alexandre Centre. *Id.* at ¶ 10. Person and Ryan then left without ever entering Petersen's home. *Id.* at ¶ 10; Petersen Decl. at ¶ 6.

DOH's investigation that led to the challenged actions it took  also include (1) uncovering that  Ismail sent fraudulent immunization records related to her child to the Onondaga County Department of Health and Florida Department of Health, Giovannetti Decl., at ¶¶ 46, 48-51, (2) receipt of Ismail's 2020 Consent Final Judgment of Dissolution of Marriage filed in Florida, which

10

states that, "the parties agree at this time that it is not in the best interest to vaccinate the child", *id.*, at ¶ 47, and (3) receipt of a felony complaint filed against Ismail for tampering with public records in the first degree. *Id.,* at ¶ 50. That felony complaint, returnable in DeWitt Town Court, Onondaga County, signed by an Investigating Officer with the Town of DeWitt Police Department states:

> The defendant, Shareen Ismail, on the aforementioned date [December 3, 2025], time and location, did commit the crime of Tampering with Public Records in the 1st degree when, knowing that she did not have the authority and with intent to defraud, she did knowingly make a false entry into the Jamesville-DeWitt Central School District, specifically the Tecumseh Elementary School. The defendant did so when she did offer a forged instrument for filing within the school, consisting of forged immunization records for her child, purportedly issued by the Family Health Network, located in Cortland, NY. The forged immunization records contained false information that being false dates and times of vaccinations with the intent to defraud the Jamesville-DeWitt Central School District. Review of the records the Defendant offered for filing to Tecumseh Elementary School, were reviewed by the Chief Medical Officer of the Family Health Network who confirmed them to be fraudulent and did not match the practices own records for the Defendants Child. Employees of the Tecumseh elementary school as well as CCTV footage at the school confirmed that the Defendant was the person who brought the fraudulent records to the school on the aforementioned date and time.

Giovannetti Decl., Exhibit K.

In addition, Ismail has separately filed an Article 78 proceeding in New York State Supreme Court, County of Onondaga seeking, *inter alia,* an order directing the Respondents, Jamesville-Dewitt Central School District and Dr. Darcy L. Woodcock, to immediately and permanently admit her son to his regular classes at Tecumseh Elementary School. *Matter of Doe v. Jamesville-Dewitt Central School District*, Index No. 013005/2025, NYSCEF No. 1.

**THE STANDARD FOR A MANDATORY PRELIMINARY INJUNCTION**

Injunctive relief, such as the preliminary injunction sought by plaintiffs here, is "an extraordinary remedy *never* awarded as of right." *Winter v. NRDC, Inc*., 555 U.S. 7, 24 (2008) (emphasis added).   Specifically, the movant bears the burden of establishing, by clear and convincing evidence, that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.  The final two factors—the balance of equities and the public interest, "merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y*., 2018 WL 2390125, *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where (i) an injunction is "mandatory" (i.e., altering the status quo, rather than maintaining it), or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).  In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *See id*. (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir. 1981)).

Furthermore as stated in *Mintz v. Chiumento,* 724 F. Supp. 3d 40, 49 (N.D.N.Y. 2024), "unless the movant demonstrates 'an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages[,] ... a motion for a

12

preliminary injunction should be denied." Citing, *Rodriguez*, 175 F.3d at 234 (quotations and citation omitted); *see also eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**ARGUMENT**

**POINT I**

<u>**PLAINTIFFS FAIL TO ESTABLISH THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**</u>

 A. <u>**Plaintiff's Fourteenth Amendment Claims Fail**</u>

  The First Cause of Action in the Complaint alleges a violation of Plaintiffs' Fourteenth Amendment procedural due process rights, Dkt. No. 1 at p. 13, ¶¶ 47-53, and the Second Cause of Action alleges a violation of Plaintiffs' Fourteenth Amendment substantive due process rights. *Id.*, at p. 16, Second Cause of Action, ¶¶ 54-57. Both claims fail.

  (1) <u>Plaintiffs have no property interest in NYSIIS or its content</u>

  Although Plaintiffs contend that their access to NYSIIS is a constitutionally protected "property" interest, *id.* at ¶ 48 (second bullet point), pertinent authority has reached the opposite conclusion. The Defendants' actions are expressly and fully authorized by PHL § 2168 as discussed above. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972). "To have a property interest, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. "Property interests are created and their dimensions are defined by existing rules or understandings

13

that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. Where, upon review of those "existing rules or understandings," the plaintiff has shown no "legitimate claim of entitlement," no property interest is established. See, e.g., *Roth,* 408 U.S. at 578-79 (where the terms of his employment "specifically provided that [his] employment was to terminate" on date certain, non-tenured assistant professor had no property interest in continued employment by university after that date). Notably, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Castle Rock v. Gonzalez,* 545 U.S. 748, 756, 760-61 (2005); *Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 175 (2d Cir. 1991); *Plaza Health v. Perales*, 878 F.2d 577, 581 (2d Cir. 1989); *Maple Avenue v. Town of North Haven,* 924 F.Supp.2d 392, 399 (D. Conn. 2013) (where government is authorized to make inherently discretionary judgments – not limited by any explicit mandatory standards or guidelines – plaintiff has no "legitimate claim of entitlement").

Plaintiffs' Second Cause of Action, Dkt. No.1, at ¶¶ 54-57, alleging a Fourteenth Amendment substantive due process violation for purported conduct which "shocks the conscience" and violates the "decencies of civilized conduct", fails for the same reasons the procedural due process claim does. *Ass'n of Jewish Camp Operators v. Cuomo,* 470 F. Supp. 3d 197, 225 (N.D.N.Y. 2020). In addition, to show a violation of substantive due process, a plaintiff must show that, "(a) he or she has a valid liberty or property interest, and (b) the defendant infringed on the liberty interest in an arbitrary or irrational manner." *Ass'n of Jewish Camp Operators*, 470 F. Supp. 3d at 225 (citing to, *Harlin Assocs. v. Vill. Of Mineola,* 273 F.3d 494, 503 (2d Cir. 2001). "Notably, substantive due process does not protect against all perceive[d]

14

infringement of valid liberty or property interests (even those that are incorrect or ill-advised), but rather only against those that are "arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Ass'n of Jewish Camp Operators*, 470 F. Supp. 3d at 225-26, citing to, *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). The Statement of Facts demonstrates that after the Defendants learned of improprieties regarding Ismail's vaccination postings for her son, the actions they took in suspending Plaintiffs' access to NYSIIS, in alerting the public and schools in particular of her suspension by posting to its website, in deleting fraudulent records of immunization for Ismail's son from NYSIIS, and in undertaking their ongoing investigation is not arbitrary or irrational, conscience-shocking, or oppressive under the Constitution." *Ass'n of Jewish Camp Operators*, 470 F. Supp. 3d at 226. The actions Defendants took are consistent with purpose of the PHL, the implementing statute, PHL § 2168, and the Regulations at 10 NYCRR 66-1. *Ass'n of Jewish Camp Operators*, 470 F. Supp. 3d at 226; *Calicchio v. Sachem Cent. Sch. Dist.*, 2015 WL 5944269, at *9 (E.D.N.Y. 2015)

DOH is granted broad discretion to regulate access to NYSIIS – including to both grant and suspend access to it – pursuant to the Public Health Law as discussed above. Because the Commissioner of DOH may refuse access to NYSIIS based on the authenticity of the request, credibility of the authorized user, or other reasons as provided for in regulation (PHL § 2168(9)), the Defendants' judgments based on a user's "credibility" – like credibility assessments in many legal contexts – are inherently discretionary and do not give rise to a vested right. *See, e.g.*, *United States v. Joseph,* 2024 WL 1827291, *3 (2d Cir. 2024) (assessment of credibility was within jury's discretion); *Newell v. Holder,* 579 Fed. Appx. 53, *54 (2d Cir. 2014); *Findlay v. MTA Bus Co.,*

184 A.D.3d 531, 531 (1st Dept. 2020); *Rosenbaum v. Atlas,* 66 A.D.3d 576 (1st Dept. 2009); *In re Decker*, 306 A.D.2d 796, 797 (3d Dept. 2003).

Further, DOH is authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "for orderly implementation and operation of [NYSIIS], including the method by which each category of authorized user may access the system." PHL § 2168(13); NYCRR 66-1.2(e) (requiring that "[e]ach person seeking access to NYSIIS must submit a completed application for access"). Neither the Statute nor the Regulation limits Defendants' exercise of discretion in such matters at the investigatory stage. As such, no medical doctor is guaranteed access to NYSIIS, or guaranteed that, if granted, access to NYSIIS will continue indefinitely. In short, the PHL reserves exclusively to Defendants the decision whether and when to suspend or terminate a user's access. By doing so, the PHL forecloses any claim that any user of the NYSIIS system has any entitlement to NYSIIS access or any property interest in it. *Roth*, 408 U.S. at 578-79 (after contract term with university expired, plaintiff had no entitlement to continued employment with university, which was within university's discretion); *Castle Rock*, 545 U.S. at 760-61; *ISS Action v. Port Authority*, 161 Fed. Appx. 120 (2d Cir. 2005) (where defendant "can unilaterally deny security access," such access is not a property interest); *Kelly Kare,* 930 F.2d at 176 ("nothing in [New York's Social Services Law] entitles Kelly Kare to uninterrupted participation in the [Medicaid] program"); *Plaza Health*, 878 F.2d at 581, 582; *S&D v. Goldin,* 844 F.2d 962, 968 (2d Cir. 1988); *Fishermen's Finest v. United States,* 155 Fed. Cl. 576, 599 (2021) ("The absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] swordfishing permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right"),

16

aff'd, 59 F.4th 1269 (Fed. Cir. 2023); *Guettlein v. United States,* 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021). As noted, Ismail agreed to this when she completed the forms necessary for access to NYSIIS and could not have conceivably believed NYSIIS or control of NYSIIS was her property.

<u>(2) Plaintiffs have no liberty interest in access to NYSIIS nor its content</u>

Plaintiffs also contend that their access to NYSIIS is a constitutionally protected "liberty" interest involving their professional reputation, good name, and standing in the medical community, Dkt. No. 1 at ¶ 48 (first bullet point), but this argument is at best another claim that Defendants' suspension of Plaintiffs' access to NYSIIS constitutes a restriction of Ismail's medical license without due process, causing her reputation to suffer. See, Ismail Decl., Dkt. No. 5-2, ¶ 18 (third bullet point: "Without NYSIIS access, I cannot perform the essential functions of a pediatrician").

Plaintiffs' argument wrongfully assumes that Ismail's license to practice medicine is dependent on her access to NYSIIS, but this is not factually or legally accurate.[4] "In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private

---

4 Ismail argues that Defendants' actions imposed on her a "license restriction" without the authority of the New York Board of Professional Medical Conduct ("BPMC"), but this argument misses the point. First, Ismail cites no authority that Defendants' conduct constitutes a "license restriction." Second, Defendants' actions at issue here are not in the nature of disciplinary actions or taken on the basis of professional misconduct (which is the subject matter of PHL § 230). Third, Defendants do not rely on PHL § 230 for their authority in the administration of NYSIIS, but rather on the independent provisions of the PHL described above in this memo. For these reasons, any rules or regulations that may apply to professional discipline (e.g., PHL § 230-a(3)) or to proceedings by BPMC are irrelevant.

17

employment, but a right which is nevertheless subject to reasonable government regulation." *Conn v. Gabbert,* 526 U.S. 286, 291-92 (1999). Importantly, "[t]hese cases all deal with a complete prohibition of the right to engage in a calling[.]" *Id.* at 292; *Roth,* 408 U.S. at 573-74 (no deprivation of liberty interest even where plaintiff was terminated from public employment where he remained "free to take advantage of other employment opportunities"); *Kelly Kare,* 930 F.2d at 177; *S&D,* 844 F.2d at 970 (no deprivation of liberty interest where contractor alleged that contract termination left it "forced out of business, tottering near bankruptcy, unable to get work"); *Guettlein,* 577 F. Supp. 3d at 104 (no deprivation of liberty interest where plaintiffs failed to plead or to show that they could not find other employment); *Green,* 2015 WL 8664175, at *9-10 ("[b]ecause [plaintiff] has no liberty interest in accessing [the government database], she cannot have a liberty interest in a job requiring such access."). The same is true here. And, as set forth in the preceding heading, the facts alleged by Plaintiffs, rather than hyperbole which populates the Complaint, do not as a matter of law rise to a malicious, conscience shocking, abuse of power.[5] *Ass'n of Jewish Camp Operators*, 470 F. Supp. 3d at 226.

(3) DOH'S Investigation does not Implicate Due Process

Ismail is a healthcare practitioner who is the subject of an ongoing administrative investigation by DOH. In these circumstances, at the administrative investigative phase where a

---

5 Even if Ismail could show that Defendants' suspension of her access to NYSIIS interfered with a protected property or liberty interest, she has not shown that the access suspension was anything other than the sort of "reasonable government regulation" to which any such right is subject. *Conn,* 526 U.S. at 291- 92. Nor has she shown that it is action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Guettlein,* 577 F. Supp. 3d at 105. To the contrary, it is plainly and rationally related to the State's compelling interest to protect the public health. *Id.*, at 105-06.

plaintiff's rights have not been adjudicated, the Supreme Court has held that plaintiff is not entitled to the protections of due process. *See, S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742 (1984) ("The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights"); *see also, Diblasio v. Novello,* 413 Fed. Appx. 352, 358 (2d Cir. 2011) (rejecting due process challenge in context of administrative investigation).

In light of the foregoing, the First and Second Causes of Action in the Complaint under the Fourteenth Amendment are unlikely to succeed on the merits and the Motion should be denied.

## B. Plaintiff's First Amendment Retaliation Claim Fails

As stated in *Baptist v. Wheeler,* 2025 WL 3120480 (N.D.N.Y November 7, 2025):

"To plead a First Amendment retaliation claim a plaintiff must show that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013). As to the second element, because a defendant's motive and intent are difficult to plead with specificity, courts in this Circuit have found it "sufficient to allege facts from which a retaliatory intent ... reasonably may be inferred." *Gagliard v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir. 1994); *see also Case v. City of New York,* 233 F. Supp. 3d 372, 390 (S.D.N.Y. 2017). "With respect to the third element, the plaintiff [generally] must show that [his] First Amendment rights were 'actually chilled.'" *Searle v. Red Creek Cent. Sch. Dist.,* 2023 WL 3398137, at *2 (2d Cir. May 12, 2023) (summary order) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001)).

*Id.,* at * 4.

In addition, the plaintiff is required to show a "causal connection between the protected speech [or conduct] and the adverse action." *Hamza v. Kotsidis,* 2025 WL 3295404, at *16 (N.D.N.Y. November 26, 2025) (citing *Dolan v. Connolly,* 794 F.3d 290, 294 (2d Cir. 2015)).

Applying the above standard to Plaintiffs' First Amendment Retaliation claim, Plaintiffs are unlikely to succeed on the merits. The Complaint alleges that Defendants retaliated against

19

Ismail after she expressed her medical judgment, including determining appropriate vaccination schedules and issuing medical exemptions where clinically indicated, associated with patients and families who may hold dissenting views on vaccination mandates, objected to the subpoena DOH issued on October 20, 2025, and by filing an Intention to File Claim with the State of New York. Dkt. No. 1, ¶ 59. The Complaint alleges the foregoing constitute "constitutionally protected activity." *Id.*

Addressing these purported First Amendment rights seriatim demonstrates the first two, patient management and associating with patients who hold dissenting views on vaccination mandates, are threadbare, non-specific, and provide no grounds for a preliminary injunction as the allegations are bereft of proof that Defendants possessed knowledge of these amorphous activities by Ismail. *Hamza,* 2025 WL 3295404 at * 16 (allegation of public speech without additional information fails to plausibly allege Plaintiffs engaged in free speech). Plaintiffs' Memorandum of Law, Dkt. No. 5-14, p. 14, also fails to address patient management and associating with those who hold dissenting views on vaccinations instead arguing only that Plaintiffs' objection on October 20, 2025, through counsel, to the subpoena Defendants issued to the Alexandre Centre on September 30, 2025, returnable on October 15, 2025, Dkt. Nos. 5-6, 5-8, which the Alexandre Centre failed to honor, along with Plaintiff's filing of a Notice of Claim dated October 23, 2025, resulted in retaliatory conduct by Defendants. Plaintiffs' Memorandum of Law, Dkt. No. 5-14, p. 14.

Plaintiffs argue the retaliatory conduct included Defendants' refusal to withdraw the vaccination website posting – however, the DOH website posting occurred on October 1, 2025, which preceded the October 20, 2025 objection to the subpoena and October 23, 2025, Notice of

Claim. Ismail Dec, Dkt. No. 5-2, ¶¶ 5, 8. Further Plaintiff claims retaliation via Defendants' removal of vaccination records of Ismail's son but this occurred on October 14, 2025 (Giovannetti Decl., ¶ 43), which was also prior to service of the October 20, 2025 objection to the subpoena and the October 23, 2025 Notice of Claim, and could not have proximally been the result of retaliation for after-occurring events.

Plaintiff also points to, as retaliation, the continuance of DOH's investigation[6] through an interview with Maria Petersen, outside of her home on November 14, 2025. Dkt. No. 5-4, Petersen Decl., at ¶¶ 4, 6. This interview, hyperbolically described in the Plaintiffs' Memorandum of Law as a "home invasion" (Dkt. No. 5-14, p. 15) was anything but and Petersen only alleges that the investigator arrived outside of her doorstep unannounced, questioned her outside, and the questioning purportedly caused her distress. Petersen Decl., at ¶¶ 4, 6, 9; *see also*, Person Decl. and above Statement of Facts.  As the Giovannetti and Person Declarations make clear, there is no causal relationship between any First Amendment activity by Plaintiffs and the alleged retaliatory actions by Defendants. *Baptist,* 2025 WL 3120480; *Hamza,* at * 16 ("[T]he Court cannot infer a causal connection based on temporal [proximity] and Plaintiffs fail to set forth any additional facts plausibly suggesting a causal connection between their protected activity and the adverse action").

In light of the foregoing, the Third Cause of Action in the Complaint under the First Amendment is unlikely to succeed on the merits and the Motion should be denied.

---

6 The other non-party declarant, Barbara Campbell, was interviewed by telephone on October 8, 2025 (Dkt. No., 5-3, Campbell Dec.), before the subpoena was served and the Notice of Claim was filed.

### C.  Plaintiff's Fourth Amendment Claim Fails

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The threshold question is whether a plaintiff possessed a liberty or property interest in the property claimed to have been unlawfully seized. *Leroy v. N.Y. City Bd. of Elections,* 793 F. Supp. 2d 533, 537 (E.D.N.Y. 2011). "Property interests are not created by the Constitution, but instead, are created and defined by existing rules or understandings 'stemming from an independent source,' which source supports a 'legitimate claim of entitlement.'" *Barnes v. Pilgrim Psychiatric Ctr.,* 860 F.Supp.2d 194, 201 (E.D.N.Y.2012) (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). As such, Federal Courts look to New York State Law to determine the existence of a property interest. *Bd. of Regents of State Colls., supra* at 577*; see also, Pelt v. City of New York,* 2013 WL 4647500, *7 (E.D.N.Y. 2018). Assuming one is identified, courts will then consider whether there existed a legitimate expectation of privacy. *Alicea v. City of Bridgeport,* 2025 WL 1982127, *2 (2d Cir. July 17, 2025).

The Plaintiffs' claim that they have constitutionally protected property interests (1) in their vaccination and patient records which were subsequently entered in NYSIIS, Dkt. No. 1, at ¶ 65, in a non-party's doorstep, *id.,* at ¶ 66, and in purported threats made to patients. *Id.* As fully set forth above in POINT I (A), Plaintiffs have no constitutional property interest in NYSIIS. In addition, any suggestion that they have a legitimate expectation of privacy in NYSIIS, a platform developed and maintained by DOH pursuant to New York State law, is meritless. What Plaintiffs attempt to do is conflate their office records with that which they entered and/or caused to be entered into NYSIIS, and argue that this somehow creates a property interest in NYSIIS, which

argument should be rejected. Dkt. No. 5-14, Plaintiff's Memorandum of Law, pp. 16, 17. Plaintiffs' actual "business records, patient data, and immunization information" (Dkt. No. 1, ¶ 65 (first bullet point)), were not seized by the Defendants. To the contrary, the Defendants merely used their digital platform, NYSIIS, to remove entries posted by those who have no ownership interest in it.[7] With respect to Plaintiff's claimed property interest in purportedly "ambushing private citizens at their doorsteps" (*id.*, at ¶ 66 (second bullet point)), none exists. *Alicea v. City of Bridgeport*, 2025 WL 1982127 at *2.  Plaintiffs have no property interest in DOH's inquiries made to non-parties, no matter how Plaintiff characterizes those investigative steps. *Id.*, at ¶ 66 (first and third bullet points).

In light of the foregoing, the Fourth Cause of Action in the Complaint under the Fourth Amendment is unlikely to succeed on the merits and the Motion should be denied.

## POINT II

## <u>PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM</u>

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank v. Citytrust,* 756 F.2d 273, 275 (2d Cir. 1985). Where the plaintiffs delay unreasonably to enforce their alleged rights, it undercuts the argument that they face irreparable harm absent the injunction. Thus, the Second Circuit has held that "plaintiffs' [10-week] delay in seeking relief render[s] inoperative any presumption that irreparable

---

7 Plaintiffs cite to *United States v. Ganias,* 755 F. 3d 125, 137 (2d Cir. 2014), for the unremarkable and fundamentally irrelevant proposition that digital files owned by and in the possession of a criminal defendant may give rise to Fourth Amendment considerations.

harm has indeed occurred[.]" *Id.* at 276. Furthermore, "[e]ven in a case concerning an alleged constitutional injury, 'it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights." *Blakeman v. James,* 2024 WL 3201671, **18, 20 (E.D.N.Y. 2024).

On September 30, 2025, Ismail "discovered" that she and her practice were on the DOH School Vaccination Fraud Awareness Website and were suspended from NYSIIS. Ismail Dec, Dkt. No. 5-2, ¶¶ 5, 8. Nevertheless, she waited almost two months to bring this motion thus foreclosing any presumption of irreparable harm. *Blakeman,* 2024 WL 3201671, **18, 20. Moreover, she has not complied with, nor moved to quash, the lawful subpoena issued by DOH on September 30, 2025, thus further demonstrating that has not suffered harm through lawful process. Giovannetti Decl., at ¶ 34.

Plaintiffs' allegations of the harm they will suffer in the future without the granting of the motion do not rise to the level required for the issuance of a mandatory injunction. Ismail alleges "Reputational Ruin" because of the website posting but then avers this "stigma" is already permanent. Ismail Dec, Dkt. No. 5-2, ¶ 18 (first bullet point). Ismail alleges a "Loss of Patients" (Ismail Dec, Dkt. No. 5-2, ¶ 18 (second bullet point)), but fails to provide the composition of her practice (i.e. the number of school age children who require vaccinations to attend school versus the number patients who do not). Ismail's practice necessarily includes adults based on Barbara Campbell who she describes as a patient (Ismail Dec, Dkt. No. 5-2, ¶ 13). Ismail further fails to quantify the number of purported patients lost nor does she provide an overall percentage of the alleged diminished clientele. *Id.* Ismail alleges that, "without NYSIIS access, I cannot perform the

essential function of a pediatrician" (*id.,* at ¶ 18 (third bullet point)), but offers no clarity as to why not.[8]

Ismail claims emotional distress but fails to substantiate this allegation with medical documentation, a diagnosis, or records of treatment. *Id.,* at ¶ 18 (fourth bullet point). General allegations of emotional harm do not constitute 'irreparable harm'. *Moore,* 409 F.3d 506, 511 (2d Cir. 2005) ("[C]laim of psychological harm too speculative to warrant preliminary relief); *Romero v. Goldman Sachs Bank USA,* 2025 WL 1918167, * 3 (S.D.N.Y. 2025) ("[T]he Second Circuit has repeatedly held that irreparable harm is not established by the existence of mere financial distress and consequent emotional or psychological distress", citing to *Holt v. Contl. Group, Inc.*, 708 F.2d 87, 90–91 (2d Cir. 1983); *Moore,* at 511).

Plaintiffs also seek monetary damages against the individual defendants to cure these purported injuries through claims of tortious interference, defamation, and abuse of process (Dkt. No. 1, Wherefore Clause at C. "Compensatory Damages"), which demonstrates that there is no need for a preliminary injunction, when Ismail tacitly admits that she can be potentially be made whole at the conclusion of the case through a monetary award, should she prevail. *New York v. U.S. Dept. of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (to establish irreparable harm, the moving party must show an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages"); *Trump on the Ocean, LLC v. Ash,* 81 A.D.3d 713, 716 (2d Dept. 2011) ("Since Trump's alleged damages are compensable in

---

[8] Ismail provides no reason why she would need to post vaccinations in December and continuing during the pendency of this litigation nor what entails the "essential functions of a pediatrician" aside from her claimed need for access to NYSIIS.

money damages and capable of calculation, Trump failed to establish the element of irreparable harm").

Ultimately, it is apparent that the claims of irreparable harm are threadbare and belied by the evidence (and lack thereof), and thus, and even assuming arguendo they invoke the Constitution, Plaintiffs fail to demonstrate that their claimed injuries cannot be remedied by the award of monetary damages they seek. *Mintz,* 724 F. Supp. 3d 40, 49; *Citibank,* 756 F.2d 273, 275.

In light of the foregoing, Plaintiffs have failed to demonstrate irreparable harm, and the Motion should be denied.

## POINT III

## THE PUBLIC INTEREST AND BALANCE OF EQUITIES WEIGH HEAVILY AGAINST GRANTING A PRELIMINARY INJUNCTION

Because Plaintiffs  fail to show irreparable harm, the court need not consider the public's interests in a temporary restraining order or the balance of the equities. *Mintz,* 724 F. Supp. 3d at * 49 ("[I]f a party fails to show irreparable harm, a court need not even address the remaining elements of the preliminary injunction standard", quoting, *Coscarelli v. ESquared Hosp. LLC,* 364 F. Supp.3d 207, 221 (S.D.N.Y. 2019)). Nevertheless, it is also clear that the public interest and balance of equities weigh heavily in favor of denying the Motion.

It is well-established that a "preliminary injunction may not issue unless the movant clearly shows that the balance of equities favors the movant." *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401–02 (S.D.N.Y. 2011) (citation omitted).  In light of Plaintiffs' failure to show irreparable harm, the balance of the equities plainly weighs in favor of denying interim equitable

relief. *See Winter*, 555 U.S. at 20. Furthermore, "[w]hen, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate public interest weighing in favor of granting the injunction." *Friends,* 841 F. 3d at 143. The Supreme Court has explained that courts should, "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero- Barcelo,* 456 U.S. 305, 312 (1982).

In this case, there is a compelling public interest in maintaining the accuracy and integrity of the data on the NYSIIS system – on which countless users of the NYSIIS system rely. The integrity of that data directly supports the public's interest in protecting the life and health of millions of individuals in the State of New York. The critical importance of accurate reporting of immunization information onto the NYSIIS database by health care providers is evidenced by the broad range of authorized users of that system and by the important purposes for which those users may access that data, all as set forth in the statute itself. PHL § 2168(8)(d)-(e). Defendants' efforts to assure compliance with the PHL and with NYSIIS support these compelling public health interests. Defendants' efforts to investigate the compliance of authorized NYSIIS users, including by demanding documents in the form of subpoenas, and to take prompt action to protect the accuracy and the integrity of the NYSIIS database, are critical to maintaining the integrity of that database and public confidence in it.

For all of these reasons, Ismail's limited interest is heavily outweighed by the public interest in enforcement of these public health measures. Indeed, many courts that have reviewed similar cases involving vaccine rules and other public health measures have denied injunctions on similar grounds. *Guettlein,* 577 F. Supp. 3d at 106 (denying preliminary injunction to enjoin

27

vaccine mandate, finding that "there is a significant public interest in safeguarding the health and safety of the Plebes and Midshipmen at the Academy"); *Garland v. New York City Fire Department*, 574 F. Supp. 3d 120, 133-34 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact"); *Maniscalco v. New York City DOE,* 563 F. Supp. 3d 33, 39-40 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "even if plaintiffs disagree with it, the Order at issue represents a rational policy decision surrounding how best to protect children"), aff'd, 2021 WL 4814767 (2d Cir. 2021); see also *T.C.*, 2022 WL 17689841, at *7-8 (denying preliminary injunction, finding that individuals other than plaintiffs would be harmed by injunction); *Cameron*, 2017 WL 2462692 (S.D.N.Y. 2017) (denying preliminary injunction to enjoin disciplinary investigation and related proceedings against medical doctor, finding that the State "has a clear interest in protecting the health of the citizens of New York by regulating the practice of medicine").

In light of the foregoing, Plaintiffs have failed to clearly demonstrate the balance of equities favor them and the Motion should be denied.

## POINT IV

## THE COURT SHOULD DENY PLAINTIFFS' MOTION TO REQUIRE DEFENDANTS TO MODIFY THE DOH WEBSITE POSTING

Plaintiffs' motion also seeks a mandatory injunction directing Defendants to remove Plaintiffs names and the information posted on DOH's School Vaccination Fraud website. Here too, Plaintiffs have failed to meet the high standard for the "extraordinary and drastic remedy" of

28

a preliminary injunction. *See, Moore,* 409 F.3d at 511. As with the other relief they seek, Plaintiffs have not shown a likelihood of success on the merits, that if the posting remains it will cause them irreparable harm, or that the balance of equities are in their favor. *Winter*, 555 U.S. at 20. Furthermore and specific to this aspect of the Motion, "[T]he Court has never held that the mere defamation of an individual was sufficient to invoke the guarantees of procedural due process[.]" *Paul v. Davis,* 424 U.S. 693, 706-12 (1976) (holding that the protections of due process are invoked only when a person's interest in liberty or property is infringed, and defamation does not fall within those categories); s*ee also, Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004); *Neu v. Corcoran,* 869 F.2d 662 (2d Cir. 1989).

Plaintiffs also fail to show any *falsity* in the web posting. The website posting, Dkt. No. 55, states: "Shareen Ismail, MD (Alexandre Centre for Children's Health) – Currently suspended from using the New York State Immunization Information System as of 9/30/25. Paper-only records of vaccinations administered after this date from this provider must not be accepted." This posting contains *one* factual assertion – and Plaintiffs concede the truthfulness of that one factual assertion by affirmatively pleading that Ismail's access and that of her practice *is suspended*. The second sentence is not a factual assertion at all, but rather DOH's directive to school districts and school administrators pursuant to law. Thus, Plaintiffs have failed to show any *falsity* in the posting.

In light of the foregoing, Plaintiffs have failed demonstrate the website posting should be modified during the pendency of the action and this aspect of their Motion should also be denied.

29

**POINT V**

**A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE ADEQUATE REDRESS IN NEW YORK STATE COURTS**

New York's CPLR Article 78 procedure, which is available to challenge state agency decisions, provides an adequate post-deprivation hearing to Plaintiff which circumstance renders her Motion for extraordinary relief meritless. *See, e.g.*, *Locurto v. Safir,* 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes"). *see also, Walker v. NYS DOH*, 2025 WL 1786917, *50-55 (E.D.N.Y. 2025) (dismissing procedural due process claim where plaintiffs had available Article 78 proceeding in which to challenge alleged deprivation). This is especially true in the circumstances of this case, where Defendants were forced to act quickly to avoid any further risk to the integrity of the data on the State's database, which they had reason to believe was being further compromised by the Plaintiff as she continued to access it, to make entries on it and to make changes to it (*see* Giovannetti Dec.). In this context, where this "paramount governmental interest" was at stake, the DOH was forced to act quickly and rightly did so. *See, Hodel v. Virginia,* 452 U.S. 264, 300-01 (1981); see also, *Gilbert v. Homar,* 520 U.S. 924, 930 (1997); *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) *Hodel,* 452 U.S. at 300-01. *DiBlasio v. Novello,* 413 Fed. Appx. 352, 357-58 (2d Cir. 2011). The availability of an Article 78 action in New York's courts is sufficient to defeat a procedural due process claim even if the plaintiff failed to avail herself of that procedure. *See, Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir. 1984).

Moreover, DOH's investigation and the action it has thus far taken in removing records from NYSIIS only involves Ismail's minor son. As set forth in the Statement of Facts, Ismail has

30

availed herself of CPLR Article 78 by filing a Petition to compel her son's admission to school to address this claim. With respect to Ismail's argument that the subpoena issued by DOH should be a nullity, both Plaintiffs and Defendants retain reciprocal rights under the CPLR to request that Supreme Court either quash it or compel Plaintiffs' compliance. Accordingly, Plaintiffs' right to seek redress in New York State Supreme Court (which as noted Ismail has availed herself of), with respect to the entirety of the relief she seeks, provides additional reason to deny her Motion.

Further, Plaintiffs filed a Notice of Claim pursuant to the New York State Court of Claims Act seeking redress against DOH for the alleged state law torts for which she demands Ten Million Dollars, demonstrating once again that she has adequate remedies without the need for a preliminary injunction. Dkt. No. 5-13.

Plaintiffs have adequate State Court remedies and accordingly, their Motion should be denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for preliminary injunctive relief should be denied in its entirety.

Dated: Albany, New York
December 9, 2025

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants New York State Department of Health, James V. McDonald, Joseph A. Giovannetti, and Jenifer Person*
The Capitol
Albany, New York 12224


By: *M. Randolph Belkin*

M. Randolph Belkin
Assistant Attorney General, of Counsel
Bar Roll No. 505404
Telephone: (518) 776-2701
Email:  Randy.Belkin@ag.ny.gov



To:     Davenport Law PLLC
        Chad A. Davenport
        *Attorney for the Plaintiff*
        6384 Deanna Drive
        Hamburg, New York 14075
        cdavenport@davenport.law